## James M. Darrah v. Jonathan Boyce.

*Equity jurisdiction—Bill for an accounting—Between owners of timber who deliver logs to mill-owner—Who makes advances on same and manufactures logs into lumber—Which he agrees to sell on commission for best interests of both parties—And retain advances, freight and saw bills, and commission—And pay over residue as lumber is sold—And keep account of the business—On refusal to account and pay over, bill for an accounting will lie—Question in such a case is not as to existence of a remedy at law, but is it adequate to do full justice between the parties—General demurrer—Will be overruled if bill can be sustained on any theory of the case.*

1. Complainant's assignors contracted to and did deliver to defendant a quantity of pine saw-logs owned by them, the contract to operate as a chattel mortgage on the logs to secure defendant for advances which he agreed to make, and for the performance of their other agreements set forth in the contract. Defendant agreed to manufacture the logs into lumber at a stated price per thousand, to sell the same for the best interests of both of the parties to the contract, and, from the money thus realized, to repay said advances, with interest, and to pay freight and saw bills and his commission, the residue to be paid to the owners of the logs, from time to time, as the lumber was sold.

Defendant kept all of the accounts relating to the business, and on demand refused to render any account to complainant, who had succeeded to all of the rights of the owners of the logs.

*Held,* that while the parties were not partners, yet the *trust* reposed in and the business to be carried on by defendant, and the *accounting* he was required to make, were equal to those of that relation, and quite as confidential ; that defendant was a trustee for the timber and lumber which came under his control, and also of the money belonging to the owners of the same when the lumber was sold, and could be held to an account in equity for the same.

*Held,* further, that in such a case the form of the action should not be made to depend entirely upon the fact that the complainant has

a remedy at law, but whether or not such a remedy is *adequate, and* will do full justice between the parties.[1]

2. A general demurrer will be overruled if the bill can be sustained upon any theory of the case. *Cochrane v. Adams,* 50 Mich. 17.[2]

Appeal from Mecosta. (Fuller, J.) Argued June 10, 1886. Decided July 21, 1886.

Bill for an accounting. Dismissed on general demurrer. Complainant appeals. Reversed. The facts are stated in the opinion, and in head-note 1.

*M. Brown,* for complainant:

If the bill can be maintained on any theory, the demurrer will be overruled: *Cochrane v. Adams,* 50 Mich. 17.

A trustee is a "person in whom some estate, interest, or power in or affecting property of any description is vested for the benefit of another; one to whom property has been conveyed to be held or managed for another:" 1 Bouvier's Law Dictionary, p. 616.

As to when an accounting will be allowed in equity, see Pomeroy's Eq. Jur. § 1421, note 1, and cases cited.

*More & Wilson,* for defendant:

To give courts of equity jurisdiction in matters of account, there must be either—

1. Mutual accounts;
2. Dealings so complicated that they cannot be properly adjusted in a court of law; or
3. A fiduciary relation existing between the parties: Story's Eq. Jur. § 459 *a;* Pomeroy's Eq. Jur. § 1421.

The existence of the relation of principal and agent is not sufficient to give equity jurisdiction to direct an accounting: *Phillips v. Phillips,* 9 Hare, 471; *Foley v. Hill,* 2 H. L. Cas. 28; *King v. Rossett,* 2 Younge & Jer. 33; *Moxon v. Bright,* L. R. 4 Ch. App. 292; *Crothers v. Lee,* 29 Ala. 337; *Miller v. Kent,* 16 Fed. Rep. 13.

---

[1] See *Chapel v. Hull,* 60 Mich. 167; *Godfrey v. White,* Id. 443 (head-note 2); *Tompkins v. Hollister,* Id. 470 (head-note 2); *McKinney v. Curtiss,* Id. 611 (head-note 3).

[2] See *Merrifield v. Ingersoll,* 61 Mich. 4.

Discovery, as a distinct branch of equity jurisdiction, does not exist in this State, for the reason that it is wholly unnecessary : *Riopelle v. Doellner*, 26 Mich. 102 ; *Shelden v. Walbridge*, 44 Id. 251.

The discovery needed in this case is ancillary to the relief, and in such a case, if the ground for the relief fails, the bill must be dismissed : *Coombs v. Warren*, 17 Maine, 404–9 ; *Emery v. Bidwell*, 140 Mass. 271–5.

SHERWOOD, J.   The bill in this case is filed to obtain an accounting.

In January, 1878, Henry Barton and Benjamin Dalziel, as copartners under the name of Barton & Dalziel, made a contract in writing with defendant, bearing date December 31, 1877, which, after reciting—

" That Barton & Dalziel, the parties of the first part, are desirous of cutting a large quantity of saw-logs during the ensuing winter, and having them manufactured into lumber during the season of 1878, and sold for their benefit and profit, and to that end are desirous of securing sufficient loans and advances, sawing and selling contracts, to enable them to carry such enterprise into effect; and that defendant, party of the second part, for the purpose of securing logs to manufacture during that season, and for the purpose of carrying on the business of selling lumber on commission, is willing to make loans and advances to first parties, and to undertake to manufacture and sell the lumber,"—provides that " the first parties shall deliver to defendant, at Wilson & Boyce's mill, at Muskegon, during the spring and summer of 1878, four million feet (as near as may be) of pine saw-logs ; that first parties own the logs, and will deliver them free from all liens; that the contract shall operate, and be considered and treated, as a chattel mortgage upon all the logs, in favor of defendant, to secure the payment of the money to become due to him under the contract, as well as the performance of the other agreements therein contained, to be performed by first parties."

The chattel mortgage clause is as follows :

" This contract shall operate, and be considered and treated, as a chattel mortgage on all the logs aforesaid, from the time the same shall be cut, in favor of the said party of the second part, to secure the timely and faithful payment of all money to become due to him hereunder, as well as for the strict and

faithful performance and observance by the said parties of the first part of all the promises and agreements and stipu·lations on their part herein contained or hereby implied."

By the terms of this agreement the defendant took posses-·sion of all the logs delivered, and agreed to manufacture them into lumber for the price of $2.25 per thousand feet; and he also had the right to ship the lumber, by rail or vessel, to such market as should be for the best interests of *both par-ties to the agreement*, and to sell the same for the best price that could be obtained; and from the money *thus realized* said defendant was to first withhold all advances made by him for the purpose of cutting said logs, with interest on said advances at the rate of ten per cent. per annum; all freights paid by him; the saw bill on said logs of $2.25 per thousand; all charges by him paid for or on account of said logs or lum-ber; also a commission of two and one-half per cent. on all sales made by him,—the residue to be paid to said parties of the first part (Barton & Dalziel), from time to time, as the lumber was sold.

The defendant agreed as follows:

To make advances to said Barton & Dalziel at the rate of three dollars per thousand feet, board measure, for the logs *cut* under the agreement, as such advances should be needed, and in proportion to the quantity of the logs put in at the time such advances were made; also to receive said logs at the booms of Wilson & Boyce, at Muskegon, or at such other booms on Muskegon lake as said defendant should designate, and with all convenient dispatch manufacture said logs into as good lumber as such logs were capable of making, and suitable for market, at and for the price of $2.25 per thousand feet, and to ship the same to the market in his judgment most suitable *for the interests of the parties*, advancing the freights on the same; to sell the same at the best market price he could obtain therefor, at a commission of two and one-half per cent.; and, after deducting all advances, and the interest thereon, the saw bill, freights, and all other charges, and advances made by him, then to pay over the residue to the said parties of the first part, from time to time, as said lumber was sold.

It further appears that pursuant to this agreement about 200,000 feet were delivered to the defendant in the spring

and summer of 1878; that no more could be delivered on account of there not being sufficient snow; and afterwards 3,000,000 feet more were delivered to and accepted by said defendant, under said agreement. After setting up the foregoing facts in the bill of complaint, the complainant further states that on the fourteenth day of October, 1878, said Barton & Dalziel made another agreement with said defendant, which is, in all respects material to this case, identical with the first agreement above mentioned. Under this last agreement 3,000,000 feet of logs were delivered to and accepted by said defendant. These logs were not all received by the defendant in one year, but he has been receiving said logs every year, since 1878; that grows out of the fact that some logs in the drives are left along the river each time a stream is driven.

It is further averred in the bill that the defendant has kept all the accounts relating to logs, advances, lumber, and business; refuses to render any account thereof to the complainant, or to any person therein interested; and that, upon a fair accounting, the defendant will be found owing the complainant $15,000; that the complainant is the assignee and sole owner of the interest of Barton & Dalziel in said contracts, and authorized to collect any amounts due thereon.

The complainant further avers in his bill that under the contracts mentioned, and in the discharge of the duties they devolved upon him (defendant), he acted to a certain extent as a trustee of the funds arising from the proceeds of the business of the parties; and in that capacity he now holds the moneys the complainant claims to be due to him, and for which the defendant refuses to account or pay over to complainant; and that he has no adequate remedy at law. The bill further says:

" Your orator further shows unto the court that all the saw-logs delivered to said Jonathan Boyce as aforesaid, and by him accepted on said agreements, were saw-logs that would make lumber worth from ten to twelve dollars per thousand feet, board measure, mill run, in the Chicago market, or in any other lumber market where lumber manufac-

tured at the said city of Muskegon is usually sold ; and if the said Jonathan Boyce has sold said lumber, or any part thereof, at a lower price, your orator submits that he ought to be charged with and account to your orator for the value of said lumber, less his advances and commissions thereon.

"Your orator further shows unto the court that he does not know, and is not able to state, the market in which said Boyce sold said lumber, nor the price for which he sold it, because he has no account of the sales of said lumber, and said Boyce refuses to give him such account, although often requested so to do."

The bill prays for discovery upon the several subjects stated, and for the usual relief in such cases.

The defendant demurred to the bill of complaint.

The demurrer is general, and will, of course, be overruled if the bill can be sustained upon any theory of the case. *Cochrane v. Adams*, 50 Mich. 17. The circuit judge, on the hearing in the Mecosta circuit, dismissed the bill.

Counsel for defendant place their demurrer upon three grounds :

1. That the bill does not state a case of mutual accounts.

2. There is no allegation in the bill that the accounts are so complicated that they cannot be properly adjusted in a suit at law, nor do the facts stated indicate such a complication.

3. It does not appear by the bill that any such fiduciary relation existed between the parties as would warrant a court of equity in taking jurisdiction upon that ground.

It is true that the parties to the contracts were not each equally interested in the property handled in the business to which the contracts relate, but they were both interested in it, and in the avails thereof when it was sold.

Barton & Dalziel held the legal title, and they, or their assigns, have the right, under the contract, to all the proceeds, except a sufficient amount to pay the defendant the disbursements made by him in the business stated.

The defendant, for certain purposes, was entitled to the possession of the property, and to its proceeds when sold, until he could reimburse himself for the moneys he had advanced for disbursements, and it was then his duty to

account for and pay over the balance to Barton & Dalziel, or to their assignee. The demurrer, of course, admits the charges of the bill, that "this the defendant did not do, but retains and refuses to pay over the money to the complainant." It will be noticed that the defendant, by the terms of the contract, is to use his best judgment, not only in the manufacture of the lumber, but in selecting the market for it, and in making sale thereof, for the interests of both parties.

It is true the relation between the parties was not that of partners, but the trust reposed in and the business to be carried on by the defendant, and the accounting he was required to make, were fully equal to those of a partnership, and quite as confidential. The defendant was not only a trustee for the timber and lumber which came under his control, but also as to the money which belonged to the complainant when the lumber was sold, and in that capacity we can see no good reason why he should not be held to account for so much thereof as was due the complainant. He was in possession of all the books and accounts relating to the business, and refused to give any account of sales, or of the place where made, or the amounts received on sales. Some sort of discovery is certainly necessary, and while, to some extent, it may be obtained in a court of law, perfect and complete disclosures as to all these matters may be obtained in a court of equity.

In this class of cases the form of the action should not be made to depend entirely upon the fact that complainant has a remedy at law, but whether or not such remedy is adequate, and will do full justice between the parties.

Technicalities should never be allowed to control in such cases, where the effect will be to impair or destroy substantial rights, but that form of action should be allowed and adopted which will best accomplish the ends of justice. These views are fully maintained by this Court in *Cochrane v. Adams,* 50 Mich. 17; *Merritt v. Dickey,* 38 Id. 44; *Ramsdell v. Millerd,* Har. Ch. 373; *Heath v. Waters,* 40 Mich. 457; *Flanders v. Chamberlain,* 24 Id.

314; also in Pom. Eq. Jur. § 1421, note 1, and cases cited; *Foley v. Hill*, 2 H. L. Cas. 28; *Moxon v. Bright*, 4 Ch. App. 292; *Marvin v. Brooks*, 94 N. Y. 71.

In *Cochrane v. Adams* the case was similar in some of its features to the present. Mr. Justice CAMPBELL says:

" The right to an accounting in equity is incident to most trust relations, * * * and, unless it is clear that complainant is already fully informed, he has a right to the information and the accounting ;"—

and refused to confine the complainant to a remedy at law.

Upon the facts stated in the bill in this case we are all of opinion that the complainant is entitled to equitable relief, and that his remedy at law is inadequate.

The decree at the circuit will therefore be reversed, with costs, and the defendant will be allowed the usual time to answer, and the record must be remanded for further proceedings.

The other Justices concurred.