## REECE v. RHOADES.

(No. 870; Decided June 11th, 1917; 165 Pac. 449.)

ACTION FOR ACCOUNTING—AGREEMENT TO ENTER INTO PARTNERSHIP—
MISAPPROPRIATION OF FUNDS—EQUITABLE RELIEF—WHAT CONSTI-
TUTES A JOINT ADVENTURE—APPEAL AND ERROR—SCOPE OF REVIEW—
EQUITABLE RELIEF—SPECIAL FINDINGS OF FACT—CONCLUSIONS OF
LAW—PRESERVATION OF EXCEPTIONS.

1. Where parties entered into an agreement to form a partner-
ship at a later time, and some of the parties furnished
money for the use of the prospective partnership, and the
other parties misappropriated the funds, it was not essen-
tial to an accounting, that the partnership have been ac-
tually formed regardless of the erroneous naming of the
relationship in the petition as a partnership.

2. Where parties entered into an agreement to form a partner-
ship, and some of them furnished money which the others
used in purchasing cattle to be owned by the partnership,
and later they sold the cattle under a claim of sole owner-
ship, the parties furnishing the money were entitled to
equitable relief.

3. A joint adventure partakes of the nature of a partnership and
is governed substantially by the same rules of law, the
principal distinctions being, that a joint adventure usually
relates to a single transaction, though it may comprehend
the business continued for a period of years, and that one
party may sue the other at law for a breach of the contract
or a share of the profits or losses or for contribution, for
advances without precluding a suit in equity for an ac-
counting or for a dissolution, and a joint adventure con-
tract need not be express.

4. A mere general exception to findings of fact and conclusions
of law made in accordance with a request therefor will not
present for consideration an objection that the findings are
imperfect or their sufficiency as a compliance with the
statute upon a request for a separate statement in writing
of findings of fact and conclusions of law.

ERROR to District Court, Park County; CARROLL H.
PARMELEE, Judge.

Suit by C. J. Rhoades and wife against Arthur Reece
and wife, for equitable relief, accounting as to partnership
property, the appointment of a receiver and the recovery of

the amount found due plaintiffs. · From a judgment for plaintiffs, the defendants bring error.

*E. E. Enterline, W. L. Walls* and *W. E. Mullen,* for plaintiffs in error.

Plaintiff sought to recover on the alleged copartnership agreement. The instrument as appears from its face is not a partnership agreement and is insufficient as a basis of an action for dissolution of partnership, accounting, etc. There was a finding that the agreement did not create a partnership and that it had been abandoned. Voluntary consent of both parties is necessary to create a partnership. (Burnett v. Snyder, 76 N. Y. 344; Holm v. Hammond, L. R. 7 Exch. 218; Sargeant v. Collins, 3 Nev. 260; Gibbs' Estate, 157 Pac. 59, 22 L. R. A. 276; Dunham v. Loverock, 158 Pa. 197, 38 Am. St. Rep. 838; Flathead Bank v. Ingham, 51 Mont. 438, 153 Pac. 1005.) It was alleged in the petition that the agreement created a copartnership. (1 Elliott on Contracts, Secs. 476 and 480.) The partnership relation cannot be formed by operation of law. (Central City Savings Bank v. Walker, 66 N. Y. 424; Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751; Butler Savings Bank v. Osborne, 159 Pa. 10, 28 Atl. 163.) Courts cannot create partnership contracts without the consent of the parties. (Fairly v. Nash, 70 Miss. 193, 12 So. 149.) Mere joint ownership in property does not create a partnership. (Quackenbush v. Sawyer, 54 Calif. 439; Edson v. Gates, 44 Mich. 253; 1 Lindley on Partnerships, 2nd Ed., p. 123.) If something remains to be done before the right of profit sharing accrues, the parties will not be partners until the happening of the event. (1 Lindley on Partnerships, 2nd Ed., p. 65.) Practical construction by parties evidenced by conduct indicates a proper construction of the agreement. (22 A. & E. Ency. of Law, 113.) There were no legal grounds for a receivership. (Wyo. Comp. Stats. 1910, Sec. 4914.) Practical construction by the parties will be accepted as to their intention. (Dayton v. Hogglund, 39 Ohio St. 680; Mereau v. U. S., 107 U. S. 437; Windmiller v. People, 78 Ill. App.

273; City of Vincennes v. Citizens' Gas Light & Coke Co., 132 Ind. 114, 16 L. R. A. 485; Pratt v. Prouty, 104 Ia. 419, 73 N. W. 1035; Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Williams v. Auten, 68 Neb. 26, 93 N. W. 943; American Soda Fountain Co. v. Bakery, 14 Okla. 258, 78 Pac. 115.) Subsequent acts and declarations of the parties showing their construction of the agreement may be shown to explain the meaning of the instrument. (Lewiston Co. v. Grand Trunk Co., 97 Me. 261, 54 Atl. 750; Laclede Construction Co. v. T. J. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Kopper v. Fulton, 71 Ver. 211, 44 Atl. 92.) And are entitled to great, if not controlling influence. (Switzer v. Pinconning Mfg. Co., 59 Mich. 488, 26 N. W. 762; Board of Commissioners v. Gibson, 158 Ind. 471, 63 N. W. 982.) The findings and conclusions are not responsive to the issues and the judgment is not warranted by the pleadings. (8 Enc. Pl. & Pr. 944-945; 1 Black on Judgments, Sec. 183; Insurance Co. v. Trout, 83 Va. 397; Bank v. Ins. Co., 85 Tenn. 76; Reynolds v. Stockton, 43 N. J. Eq. 211; Schmidt v. Mining Co., 28 Ore. 9.) Failure to make sufficient findings upon a request therefor is reversible error. (School Dist. v. Western Tube Co., 13 Wyo. 304; Shattuck v. Costello (Ariz.), 68 Pac. 529; Kehr v. Hall (Ind.), 20 N. E. 279; Ex parte Walls, 73 Ind. 95; Mitchell v. Brawley, 140 Ind. 216; Hamill v. Talbott, 72 Mo. App. 22; Ins. Co. v. Tribble, 86 Mo. App. 546; Evans v. Kister, 92 Fed. 828; Land Co. v. Lombard, 132 Fed. 721; Mitchell v. Jensen, 29 Utah 346, 81 Pac. 165; Wood v. Broderson, 12 Ida. 190, 85 Pac. 490; Daggs v. Hoskins, 5 Ariz. 236, 52 Pac. 357; Carpenter v. Yeadon Borough, 208 Pa. 396, 57 Atl. 837; McHale v. Wellman, 101 Tenn. 150, 46 S. W. 448; Farmer v. Power Co., 117 Wis. 76, 93 N. W. 830.) Findings of fact merely announcing legal conclusions deducible from facts not stated are not sufficient to support a judgment; all the facts essential to a recovery must be stated in special findings. When findings are silent respecting a material fact, it is taken as formed against the party upon whom the burden of proving it rested. (Mitchell v. Brawley, 39 N. E. 497; Bruner

v. Brown, 38 N. E. 318; Leach v. Church, 10 O. St. 148; Fiske v. Casey (Cal.), 36 Pac. 668; Foster v. Devinney, 28 Neb. 416; 8 Ency. Pl. & Pr. 943; Siebel v. Bath, 5 Wyo. 409; Bank v. Farwell, 56 Fed. 570.) Special findings must cover the issues made by the pleadings. (Lumber Co. v. Davis, 14 Wyo. 478.) Where special findings are inconsistent, the judgment must be reversed. (McBride v. U. P. Ry. Co., 3 Wyo. 253; Koshland v. Weber, 23 Wyo. 241, 148 Pac. 369.) There was no finding as to insolvency of defendants and it must be presumed that defendants were and are solvent. The conclusions of law are not supported by the findings of fact. The judgment is unsupported by the findings of fact and conclusions of law. The findings of fact, conclusions of law and judgment are irreconcilable to the issues made by the pleadings.

·W. L. Simpson, J. H. Van Horn and Lonabaugh & Wenzell, for defendants in error.

The findings of fact cover all the essential allegations of the petition. The judgment follows the findings of fact. There is no error warranting a reversal of the case. (Jack v. Hudnall, 25 O. S. 255; Hihn v. City of Santa Cruz, 150 Pac. 62; Shinkle, et al., v. First National Bank, 22 O. St. 523.) True, there must be a lawful and valid agreement to enter into partnership, and the contract must be executed. (Holgate v. Downer, 8 Wyo. 334.) In the present case there was clearly an agreement to execute a partnership. The agreement to form a partnership was consummated by the acts of the parties insofar as the cattle were concerned. It·is not necessary that the partnership agreement provide that the profits or losses shall be shared equally. (Munic. Paving Co. v. Herring, 150 Pac. 1067.) The intermingling of findings of fact with conclusions of law is not reversible error. (Griffin v. Pacific Elec. Ry., 82 Pac. 1084; O'Reilley v. Campbell, 116 U. S. 420, 6 Sup. Ct. Rep. 422; 29 Law. Ed. 699; Baker v. DeArmigo, 128 Pac. 73; Frazier v. State Savings Bank, 137 Pac. 592.) Immaterial findings or conclusions of law are not grounds for reversal. (·Gregory v.

Morris, 1 Wyo. 213; Jenkins v. City of Cheyenne, 1 Wyo. 287; Fein v. Davis, 2 Wyo. 118.)    A finding of insolvency is not required in order to warrant a receivership; there was sufficient ground for the appointment of a receiver. Failure of the plaintiff to call the attention of the court to an omission and to request further finding, relieves the court of criticism therefor.  This is a queer case, but the trial court rendered substantial justice to all parties in its disposition of it.  The livestock transaction is separable from other features of the agreement.  (Kennedy v. Lonabaugh, 19 Wyo. —; Foyer v. Harken, 121 N. W. 526.)   The judgment of the trial court should be affirmed.

POTTER, CHIEF JUSTICE.

This action was brought in the District Court by the defendants in error, C. J. Rhoades and B. A. Rhoades, seeking equitable relief, including an accounting, the appointment of a receiver, and a judgment for the amount found to be due the plaintiffs to be paid out of certain property referred to in the petition as partnership property.  There was a general denial of the material averments of the petition, and a trial by the court resulted in granting some of the relief prayed for.  The case is here on error, but without the evidence, the errors assigned relating to the sufficiency of the petition and findings of fact to sustain the conclusions of law and judgment or authorize the relief demanded or granted.

The petition alleges and the court found that on the date thereof the plaintiffs and defendants entered into the following written agreement:

"LIVINGSTON, MONT., April 25, 1912.

"This an article of agreement for and between Arthur. Reece and Alice Reece, his wife, parties of the first part, and C. J. Rhoades and B. A. Rhoades, his wife, parties of the second part, wherein the parties of the first part are owners or controllers of a body of land held under different grants, namely, homestead desert claims and leases, etc., controlling mountain range and water filings and rights (as per description attached), do hereby bargain and agree to become and

entertain parties of the second part as full and one-half interest co-partners in all lands, grants, leases and holdings, real estate and personal property for a consideration of six thousand dollars ($6,000.00) to be paid by parties of the second part, in installments best suited to all parties on or before October 1, 1915. One thousand dollars ($1,000.00) of this amount to be paid on or before June 1, 1912, of which shall be used to pay all outstanding acts and debts of first parties. The remaining $5,000.00 to be invested on the ranch or in live stock and improvements and shall become a part of this said whole property. as controlled by this agreement under the same agreement (co-partnership) as hereinafore mentioned. Parties of the second part further agree to share equally in expenses or all moneys actually expended for ranch improvements and stock purchased."

After setting forth this agreement, the petition refers to it as a partnership agreement and alleges due performance by the plaintiffs of everything required of them thereby, that they had paid to defendants thereunder various sums of money and turned over to them cattle of the value of $1,700, and contributed under the agreement, with the knowledge and consent of defendants, in money and cattle an amount in excess of $6,000. That the defendants had failed and refused and were unable to perform the same and had made default therein, except that they had delivered to the plaintiffs a relinquishment of a certain land entry made under the laws of the United States. That on or about October 15, 1915, in disregard of the agreement, the defendants took exclusive possession and control of the real and personal property "of said co-partnership," and ever since have claimed sole ownership thereof, and the right to sell, dispose of and encumber the same, and divert the money so acquired to their own use. That they have failed and refused to account to the plaintiffs "for any part of the partnership" property or effects or for moneys furnished them by the plaintiffs and expended by the defendants or converted to their own use, and have converted to their own use moneys furnished by the plaintiffs for carrying out the objects mentioned in

the agreement. That the defendants threaten and are about to sell the cattle aforesaid and appropriate the proceeds thereof to their own use, in disregard of the rights of the plaintiffs. That defendants have failed and neglected to expend any money in the improvement of the ranch, except a small amount furnished by plaintiffs, or to expend for stock any of the money furnished by the plaintiffs. That the cattle aforesaid were purchased by the plaintiffs and turned over to the defendants "under said co-partnership agreement." That by reason of said acts and omissions of the defendants the plaintiffs have and are greatly and irreparably damaged; that defendants and each of them are insolvent, and the plaintiffs have no plain, speedy or adequate remedy at law.

Relief is prayed substantially as follows: That the partnership be dissolved, and a receiver appointed of all the personal property of the partnership; that the defendants be required to deliver to such receiver all books of account, checks and memoranda in their possession relating to the business, dealings or transactions of the partnership; that an account be taken of all the partnership business, dealings and transactions, and of the moneys paid by the plaintiffs in relation thereto; that the live stock be decreed to the plaintiffs; that the defendants be enjoined from interfering with the partnership property and effects; that upon an accounting the amount due the plaintiffs be found and the same paid out of the partnership property, and the remainder of such property, if any, be apportioned between the parties according to their respective interests as may be found by the court, and such other relief as may be just and equitable in the premises.

It appears that on the same day the petition was filed, January 8, 1916, a receiver was appointed and he was directed to take possession of all property belonging to the parties to the action, including all books of account and papers bearing upon the partnership transactions of the parties, and the parties were ordered to deliver to the receiver all of the property of the partnership or claimed by either party as part-

nership property. There is no report of the receiver in this record, but it appears from the findings that he had taken possession of certain personal property, and directions are given thereby and by the judgment for disposing of the same.

As above stated, the evidence is not before us, but the court stated in writing its findings of fact and conclusions of law, pursuant to a request therefor. Owing to the length and narrative form of such findings and conclusions, a re- cital of the facts as found will be confined to the essential or more prominent facts, but deemed sufficient to show gen- erally the relation and conduct of these parties, omitting several merely incidental matters important only as part of the history of the business relations of the parties following the making of the agreement aforesaid, and as tending to explain the continuance thereof without a more definite un- derstanding.

It is recited in the findings as a preliminary statement that it is conceded by counsel that the case "is a remarkable one in many respects, particularly in regard to the very crude methods of doing business exhibited by the parties." The case is a remarkable one. Although the written agreement aforesaid recites that the defendants (described in the agree- ment as parties of the first part) "are owners and controllers of a body of land held under different grants, namely, home- stead desert claims and leases, etc., controlling mountain range and water filings and rights," the court finds that the only land owned or controlled by the defendants was a home- stead entry of one of them, Arthur Reece, indefinitely marked on account of defective surveys, upon which he had not been able to make final proof because of the failure of the government authorities to file amended plats showing the definite location of the same; but that immediately prior to the date of the agreement said Arthur Reece and C. J. Rhoades, one of the plaintiffs and a dentist by profession residing in Kansas City, Kansas, met and visited the former's ranch in Park County, who then pointed out to the latter the land claimed by him, and other land which he had in

mind to acquire title to through desert and other entries—the location of mountain range and other advantages for running stock; whereupon propositions were discussed for entering into a partnership, and with that in view that they went to Livingston, Montana, where the defendant, Alice Reece, then was, and entered into the written agreement aforesaid. It is also found that outside of said homestead entry, a permit for the use of a reservoir site, and a rejected desert application of Alice Reece, there were no filings, entries or rights of any kind by either of the defendants to any land in the vicinity of the ranch.

It is found, however, that the plaintiffs learned of such condition in the spring of 1914, and then ceased to expect or require a conveyance to them by defendants of any rights under the land laws or of any lands, but made unsuccessful efforts to enter land originally believed to be part of defendants' holdings, to acquire a home thereby and further the contemplated project of engaging in the stock business in that locality; that C. J. Rhoades also after that time applied for and obtained a reservoir permit to irrigate his contemplated homestead, upon the same site covered by the permit of Arthur Reece which had expired by limitation.

Notwithstanding this situation as to the lands claimed by defendants to have been owned or controlled by them, the plaintiffs, as the court finds, made the payments provided for in the agreement, the specific finding in that respect being as follows:

"That payments had been made to the defendants by the plaintiffs in cash or in goods furnished to them or bills paid for them by the plaintiffs in the total sum of $5,901.26. That the plaintiffs claim payments in excess of the sum of $6,000.00, the chief difference in accounts being in this, that the plaintiffs allege the furnishing of one horse in the amount of $140.00, and a sulky plow in the amount of $31.75, the receipt of which the defendants deny. The property above referred to is at hand and in the hands of the receiver and can be returned to the plaintiffs. Other charges not acquiesced in by the defendants are of slight amount and can be

rejected by the court, thus accepting as correct the statement of the defendants as to the amount of the property furnished and received. The above amount included $1,700.00 paid by the plaintiffs for the purchase of some cattle on August 27th, 1914, from John Dahlem and branded in the brand then owned by Arthur Reece, to which he subsequently on the 4th day of September, 1914, transferred a one-half interest to Charles J. Rhoades, one of the plaintiffs herein."

The court further finds that at least one thousand dollars was paid and applied for the purpose mentioned in the written agreement, viz.: toward the discharge of the debts of the defendants, "but that said sum was insufficient to pay all of said debts, and that the defendants constantly importuned plaintiffs for more money to be applied to that purpose," and that numerous other sums were furnished by the plaintiffs for such purpose, and a large portion paid after the payment of the one hundred dollars aforesaid "was furnished to the defendants in compliance with their repeated requests and demands for living expenses, for the support and education of their children, for excursions, medical treatment, and various other purposes aside from any matters contemplated by the original agreement, with the full knowledge of the plaintiffs of the purpose for which the money was solicited, and of the fact that it was being applied for purposes entirely different from those contemplated in the agreement." But the court also finds that the plaintiffs frequently remonstrated with the defendants for such diversion of the money and protested against its being done; that these protests and remonstrances were met by explanations, importunities, and promises that when the present object should have been accomplished the defendants would then be in a better position to carry out the original purpose of their contemplated partnership, and that both parties would profit thereby; that the plaintiffs accepted such promises and acquiesced in the delays and diversion of said money, believing, however, that the total amount of their payment would in the end inure to their benefit and enable the part-

nership business to be carried on to better advantage; that they did not agree to the ultimate and complete appropriation by the defendants of the right and benefit of all such payments, without expectation of return to themselves.

It also appears from the findings that during the period of such payments the defendants gave the plaintiffs their notes for some of the money so advanced, viz.: one note for $800 dated June 28, 1912; one for $800 dated December 5, 1912, and one for $1,600 dated November 18, 1913, securing the note of June 28, 1912, by a chattel mortgage upon a team and other farm property of the defendants. That on or about September 4, 1914, at or about the time of the transfer to the plaintiffs of a half interest in the cattle brand of defendants the plaintiffs returned to the defendants the chattel mortgage aforesaid and the note for $1,600, with the intention of cancelling and releasing the same, and retained the other two notes. That in January, 1915, the plaintiffs purchased hay, paying $100 therefor, which was used for feeding the cattle purchased as aforesaid, and in June and July, 1915, other stated amounts for grazing the cattle on the Forest Reserve and for putting up hay for the cattle, and that during that summer C. J. Rhoades and Arthur Reece each worked in the hay field in putting up hay for the use of said cattle. That the written agreement aforesaid does not seem to have been regarded by either of the parties as establishing a partnership relation between them at the time, but that they apparently expected to become associated as partners in the future, having in view large schemes for conducting a live stock, tourist and guide business; the tourist and guide business having been considered by them after entering into the written agreement. That Arthur Reece frequently wrote to C. J. Rhoades during the period aforesaid describing the condition of affairs at the ranch and in the county, suggesting projects for investment, "and portraying in gorgeous terms the future and profitable progress of their business." That in one letter, in August, 1912, suggesting the purchase

of horses and saddles which would be needed in the tourist business, he wrote: "Everything I buy will be partnership stuff. I'll give you credit for one-half and note also as we talked"; and in another: "Well, pard, tell Mrs. Rhoades for me that I think you folks are making fifty per cent on every dollar invested up here so far. Our place will sell for double what I let you in for, as soon as it is proved up on."

During the season of 1915, the findings state, there were more acute contentions between the parties; the defendants demanding that plaintiffs furnish more cattle to be run with those previously purchased, and a bill of sale to them for a one-half interest in the latter; the plaintiffs complaining of the diversion by defendants of a large part of the money paid them from the purpose intended by the written agreement, and of the branding of the cattle with the brand of defendants. But that until the latter part of the summer or early autumn of 1915 the cattle that had been purchased as aforesaid were treated by the parties as the property of both plaintiffs and defendants, with equal interest therein, and that such was the intention of both parties when the cattle were purchased. That finally, some time in the fall of 1915, the plaintiff Arthur Reece informed the plaintiffs that said cattle belonged to him, and that the plaintiffs had no interest therein, that he had sold some of them and the proceeds belonged to him. And the court finds that said Reece had sold five head of the cattle and converted the proceeds ($245) to his own use, and had butchered one head.

In substance, the material conclusions of law of the trial court are as follows: That the written agreement aforesaid was not one constituting a partnership at the time, but was an agreement to enter into a partnership; that the parties did not become partners at the time of signing the agreement, and at that time did not own or possess any property as a partnership, but their agreement was for a partnership in the future when there might be property to come under it. That none of the property in the receiver's possession can be considered as partnership property, except the cattle

and hay. That whatever co-partnership existed between
the parties at any time "existed only by virtue of the pur-
chase of property to be held in the contemplation of the
parties as partnership property, and embraced in such agree-
ment as might be made for the handling of such property."
That until the purchase of the cattle aforesaid no property
had been bought by defendants as contemplated by the or-
iginal agreement, but all moneys paid them by plaintiffs had
been converted to their own use until, on August 27, 1914,
through the joint efforts and negotiations of the plaintiffs
and defendants, and through the payment of money by the
plaintiffs, the cattle aforesaid were purchased "as and for
partnership property, and that said cattle, together with the
increase thereof, constitute the only property purchased and
owned and acknowledged by both parties to be partnership
property. That as a matter of law the said property having
been purchased through the efforts of both parties with the
intention that such property should become partnership
property, and that purchase having been made from the
proceeds of moneys provided by the said agreement of April
25th, 1912, to be paid by the plaintiffs to the defendants for
the purpose of investment in partnership property, a part-
nership was then and there as a matter of law created be-
tween the parties hereto with respect to said cattle in which
each party had and has an undivided one-half interest, sav-
ing and excepting, however, that the said partnership so as
above formed in contemplation of law by the acts of the
parties in pursuance of the previous agreement to enter into
a partnership, may have acquired as partnership property
the ownership of certain hay heretofore fed and now being
fed to said cattle and designed by both parties for that pur-
pose." That the court having jurisdiction for one purpose
will determine all issues submitted to it, and the mutual
claims of the parties, particularly the claim of plaintiffs for
money paid pursuant to the written agreement, though not
an equitable matter, having been submitted to the court,
with evidence thereon on behalf of both parties, the same
may be determined and settled in this action. That the

plaintiffs are entitled to an account as to the application of their payments under the agreement. That of the total amount paid by the plaintiffs, viz.: $5,901.26, the following sums, amounting to $3,111.74, were applied as contemplated by the agreement: $1,000 toward the discharge of the debts of defendants; $250 expended in real estate improvements; $1,700 expended in the purchase of cattle; $161.74 expended for labor, hay and taxes. That the balance, $2,789.52, was misapplied by the defendants, and appropriated to their own use. That defendants are accountable to the plaintiffs for that amount, in which, if it had been properly applied, plaintiffs would have been entitled to a one-half interest. That defendants are also chargeable for the money received for the five head of cows sold by them, in which plaintiffs are entitled to a one-half interest, making the total amount due the plaintiffs from the defendants $1,517.26.

The court then concludes by finding generally for the plaintiffs; that the receiver was properly appointed to take charge of the partnership property; that certain personal property in his hands belonged to the plaintiffs and should be returned to them; that certain other personal property in his hands is the individual property of defendants and should be returned to them; that 57 head of neat cattle, as described by the receiver, and the hay mentioned by him, as well as the cattle brand, are partnership property, and should be sold by the receiver in the manner provided by law for the sale of property upon execution; that the receiver care for the cattle until the sale, and be authorized to incur all necessary expense for feeding and handling them; that the two notes of defendants for $800 each, being merged in the judgment be cancelled; and that the proceeds of the sale of the cattle be divided equally, one-half to be set aside for the plaintiffs, and the remaining one-half applied: (1) to payment of the costs of the action, the receiver's costs and expenses incident to the care and sale of the property, and his compensation; (2) to the payment of the sum of $1,517.26 found due to the plaintiffs; (3) the balance, if any, to be delivered to the defendants. Judgment was there-

upon entered in favor of the plaintiffs for the said sum of $1,517.26 and costs, and ordering the sale of the cattle in the receiver's hands and distribution of the proceeds as aforesaid, and that the partnership then existing be dissolved. There was a general exception by defendants to each and all the findings of fact, conclusions of law and the judgment.

The principal contention of the defendants, plaintiffs in error here, seems to be that the facts found by the trial court do not show a partnership between the parties, and therefore furnish no ground for an accounting, the appointment of a receiver or other equitable relief. It was not necessary for the plaintiffs below to show the existence of a partnership to give them a right to an accounting and the other relief granted as to the money paid by them and misapplied by the defendants and the property jointly owned. The petition alleges the making of the written agreement aforesaid, and the performance thereof by the plaintiffs on their part, the payment of the money thereby required, including the purchase of cattle of the value of $1,700 with the knowledge and consent of defendants, the conversion by the defendants to their own use of the money so paid without accounting therefor, and their taking exclusive possession and claiming sole ownership of the joint property. It is true that the petition refers to the agreement as a partnership agreement and to the relation between the parties as a partnership. But if upon the facts alleged and found by the court the plaintiffs would be entitled to an accounting and the other relief asked and granted as to the money and property involved, it is immaterial that the relation between the parties may have been erroneously named in the petition or alleged to be a partnership. (1 Cyc. 437; Coward v. Clanton, 122 Cal. 451, 55 Pac. 147; Marston v. Gould, 69 N. Y. 220; Kahn v. Central Smelting Co., 102 U. S. 641, 26 L. Ed. 266; Valdes v. Larrinaga, 233 U. S. 705, 34 Sup. Ct. 750, 58 L. Ed. 1163; Shirley v. Goodnough, 15 Ore. 642, 16 Pac. 871.) And we think it clear that whatever the effect of the written agreement or the subsequent conduct and transactions of the parties as to providing for or creating a partnership, and if

it be conceded that said agreement was for a partnership at some future time only, a fiduciary relationship was established by the payment of money by the plaintiffs under the agreement and the circumstances stated in the findings entitling them to an accounting, the court having found that the greater part of the money was not applied by the defendants as provided or contemplated by the agreement. (6 Pomeroy's Eq. Juris., Secs. 931-933; 1 Cyc. 427; Darrah v. Boyce, 62 Mich. 480, 29 N. W. 102; Petrie v. Torrent, 88 Mich. 43, 49 N. W. 1076; Wilson v. Kennedy, 63 W. Va. 1, 59 S. E. 736; Templeton v. Bockler, 73 Or. 494, 144 Pac. 405; King v. Barnes, 109 N. Y. 267, 16 N. E. 332.)

But the court found that certain cattle had been purchased by the parties with money furnished by the plaintiffs under the agreement, with the intention of both parties at the time of the purchase that such cattle should be the property of plaintiffs and defendants with equal interests therein, that the cattle were thereupon treated and cared for by said parties as their joint property, and that Arthur Reece, one of the defendants, transferred to C. J. Rhoades, one of the plaintiffs, a half interest in the brand belonging to him with which the cattle were branded. And the court found as a conclusion of law that a partnership was created as to said cattle. We do not construe that finding as holding that the partnership was created or existed merely by operation of law without an agreement of any kind, but that a partnership was to be inferred from the intention and conduct of the parties in connection with the written agreement providing for the investment of a greater part of the money to be paid thereunder in live stock and improvements. We think it unnecessary to consider very closely whether the findings of fact are sufficient to justify that conclusion. The parties were at least co-owners of the cattle, and the plaintiffs had expended money, and both of the parties' time and labor jointly, in caring for and providing feed for them; and such joint ownership, under the circumstances of the case and the claim of defendants of sole ownership and their threat to sell and retain the proceeds for their own

benefit, would, we think, authorize equitable relief. (Free-man on Cotenancy, Sec. 321; 1 Cyc. 417; 6 Pomeroy's Eq. Juris., Sec. 933.)

If not strictly a partnership, the relation between the parties as to the cattle might not improperly be considered and treated as a joint adventure, and it would be immaterial that the court called it a partnership, for a joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law; the principal distinctions being that a joint adventure usually relates to a single transaction, though it may comprehend a business to be continued for a period of years, and that one party may sue the other at law for a breach of the contract or a share of the profits or losses, or for contribution for advances, without, however, precluding a suit in equity for an accounting, or for dissolution. And the contract need not be express, but may be implied from the conduct of the parties. (23 Cyc. 453, 455, 461; Goss v. Lanin, 170 Iowa, 57, 152 N. W. 43; Saunders v. McDonough, 191 Ala. 119, 67 So. 591; Mc-Ree v. Quitman Oil Co., 16 Ga. App. 12, 84 S. E. 487.) The principles controlling the relation are stated on pages 455 and 456 of 23 Cyc., and in Goss v. Lanin, supra. In such a joint venture fiduciary relations are created between the parties, as in a partnership; and neither of the parties is authorized to appropriate the common property to his own use, without the consent of all his associates, or to deal therewith so as to secure an unfair advantage over those interested with him.     ·

The statement is made and repeated several times in the brief of plaintiffs in error that the trial court found that the written agreement had been abandoned by the parties. We do not so understand the findings. We suppose such statement to be based upon one paragraph to the effect that soon after the agreement was entered into the parties began a course of conduct apparently inconsistent with the agreement. But that must be read and considered in connection with the other findings, which plainly show that the trial court regarded the agreement as continuing in force and as

having been complied with on the part of the plaintiffs. Several of the conclusions of law are criticized as a finding of fact rather than of law, or containing findings of fact. But we find in the record no specific exception to the findings or conclusions on that ground. There was merely a general exception. It was held in Hilliard v. Douglas Oil Fields, 20 Wyo. 201, 122 Pac. 626, that a mere general exception to findings of fact and conclusions of law made in accordance with a request therefor will not present for consideration an objection that the findings are imperfect or their sufficiency as a compliance with the statute upon a request for a separate statement in writing of findings of fact and conclusions of law. But we do not regard the fact that some findings of fact may have been blended with the conclusions of law as prejudicial to the plaintiffs in error. Indeed, in some of such instances referred to in the brief the matters complained of as a finding of fact rather than a conclusion of law is but a re-statement, though in somewhat different language, of facts found and stated in the findings of fact.

We think it necessary only to say in conclusion that in our opinion the facts found by the court clearly present a case for equitable relief and support the relief granted. The judgment will therefore be affirmed.              *Affirmed.*

BEARD, J., concurs.

SCOTT, J., did not sit.