### BLACKNER et al. v. McDERMOTT.

### No. 3868.

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1949.

John S. Boyden, Salt Lake City, Utah (Knox Patterson, Salt Lake City, Utah, and Robert G. Clark, Cheyenne, Wyo., on the brief), for appellants.

Albert D. Walton, Cheyenne, Wyo., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This was a suit brought by John R. McDermott against A. E. Blackner, Essie M. Blackner, wife of A. E. Blackner, and Richfield Oil Company, a corporation. Plaintiff sought a declaratory judgment determining that an operating agreement entered into by and between plaintiff and defendants A. E. Blackner and Essie M. Blackner for the development for oil and gas purposes of certain lands in Wyoming was in full force and effect; determining that an operating agreement subsequently entered into by and between the defendants A. E. Blackner and Richfield Oil Company for the development of such lands was without force and effect; awarding plaintiff the possession of the lands for the purpose of development; and enjoining the defendants and those holding under them from claiming any right in such premises by, through, or under the later operating agreement. The pleadings contained many allegations, admissions, and denials. Exhibits were attached to the pleadings and certain material facts were stipulated. Judgment was entered for plaintiff and defendants appealed.

An extended statement of the facts is necessary to an understanding of the questions involved and the circumstances under which they arose. McDermott obtained information indicating that certain lands in Sweetwater County, Wyoming, constituting part of the public domain of the United States soon would be open to application for mineral lease under the provisions of the Act of February 25, 1920, 41 Stat. 437, and he inquired whether Blackner was interested in submitting an application in his name for a lease covering such lands. Negotiations between them resulted in a verbal agreement that an application should be submitted in the name of Blackner and that in the event the lease was granted the parties should enter into a formal operating agreement under which McDermott should have full operating control of the premises under the lease and Blackner should have an overriding royalty of one and one-half per cent of the oil and gas produced from the premises. McDermott caused the application to be prepared; Blackner signed it; McDermott furnished the filing fee of ten dollars; and the two of them together mailed the application and the filing fee to the land office in Wyoming. Soon thereafter, McDermott, and Blackner and his wife, executed the written operating agreement. It provided among other things that upon the granting of the lease, McDermott should have the right to take possession of the leasehold estate and develop and operate it for the production of oil and gas; that he should comply with all the conditions and requirements of the lease or leases and the applicable laws and regulations; that he should execute and file such applications for extension of the lease or leases and do all other things which might be necessary in the premises to protect the rights and interests of the parties; and that he should be the attorney in fact for Blackner with full authority to take any action before the Department of the Interior in the name of

Blackner which might be necessary for the use and benefit of the parties. And it further provided that McDermott should pay all costs and expenses of the development and operation of the premises, including rentals and taxes; and that he should pay. to Blackner an overriding royalty of one and. one-half per cent of the oil and gas produced, saved, and marketed, and not .used for development purposes.

The application· for the lease was approved. McDermott caused $400 to be mailed to the register of the land office with which to ·pay the rental for the first year. The lease was issued, and the parties made plans for the development of the premises. The plans included the forming of a·corporation and· the raising ·of capital. Friends of ·McDermott agreed to advance $2500 in ·cash to ·be used as ·capital ·with which to ·start the ·development. Disagreement arose between McDermott and Blackner. Blackner opposed ·approval of the operating agreement by the Department of the· Interior, and he repeatedly advised the parties who had agreed to advance the $2500 that he intended to have the agreement annulled. As the result of ·his attitude, the parties declined to advance the money for development; · and due in part to his interference, McDermott was unable to carry forward any affirmative effort to develop the property but he did make a contract with Sinclair-Wyoming Oil Company looking to that end. The operating agreement between Blackner and McDermott was approved,· and shortly thereafter Blackner instituted in the United States Court for Wyoming an action against McDermott. Sinclair-Wyoming ·Oil Company later became a party defendant. Blackner sought cancellation of the original operating agreement and the agreement between McDermott and the Sinclair Company. Judgment was entered against Blackner and it became final. Shortly before the lease was to expire according to its terms, McDermott and Blackner acting separately each filed an application for a renewal in his own name. McDermott later amended his application to show the operating agreement and to show that his application was made under the authority of it for the bene-

fit of both parties thereto. On the day· following the expiration of the lease, the attorney now representing McDermott filed an application for a lease in his name. A new lease was granted Blackner on the basis of his preferential right by virtue of being the lessee under the original lease.

At about the time of the granting of the new lease, Blackner entered into an operating or option agreement with Richfield Oil Company. McDermott filed in the General Land Office a protest against its approval. As the result of the proceedings, the Department of the Interior determined that · the matter of the approval of that operating agreement should be suspended for a period of forty days within which either party might institute in a court of competent jurisdiction appropriate proceedings for the adjudication of their respective rights in the premises. McDermott then instituted this action.

■ The conclusion of the .trial court that McDermott and Blackner were partners or joint adventurers is challenged. Jurisdiction of the court resting upon diver·sity of citizenship, and the action not being one under federal law, the relationship of the parties each toward the other in respect of the leasehold estate must be determined by the law of Wyoming. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life. Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

■ A joint adventure is defined in general language as a special combination of two or more persons devoted to a specific enterprise in which profit is jointly sought, without any actual partnership or corporate designation. It is sometimes difficult and oftentimes unnecessary to distinguish in a particular case between a joint adventure and a partnership, as the relation of joint adventurers is controlled largely by the principles of partnership, even though under the law of Wyoming the two are not identical. Reece v. Rhoades, 25 Wyo. 91, 165 P. 449; Hoge v. George, 27 Wyo. 423, 200 P. 96, 18 A.L.R. 469.

■ McDermott and Blackner undertook by their joint efforts to obtain from the

United States a mineral lease covering lands thought to have potential value for the development of oil and gas. Blackner signed the application for the lease. McDermott furnished the money with which the filing fee was paid. The lease was issued to Blackner and he signed it as lessee. McDermott caused the rental for the first year under the lease to be paid with money which he obtained by a loan. The enterprise has its genesis in their joint efforts. And each had a different interest but both sought profit from the enterprise, McDermott from the development and operation of the premises and Blackner from the overriding royalty. Whether they were partners or joint adventurers, by mutual agreement they entered into a joint undertaking for their mutual advantage and under the law of Wyoming a fiduciary relationship existed between them in respect of the enterprise which required the exercise of good faith, one toward the other. Reece v. Rhoades, supra; Hoge v. George, supra; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P.2d 206, 80 A.L.R. 1037. And the wrongful breach of that duty on the part of Blackner entitled McDermott to relief in equity appropriate to the particular circumstances. Reece v. Rhoades, supra; Hoge v. George, supra; Wyoming-Indiana Oil & Gas Co. v. Weston, supra.

■■ The further contention is that the operating agreement between McDermott and Blackner related only to the original lease and that it had no application whatever to the new lease granted to Blackner. It is argued that the words "extension" and "renewal" used in the operating agreement did not include the new lease subsequently issued to Blackner. But the contention leaves out of consideration the fact that the operating agreement provided in effect that the respective rights of the parties under it should extend throughout the term of the application, the lease or leases, and any extension or renewal of the lease or leases. It may be that as between the United States and Blackner the second lease was a new one rather than an extension or renewal of the former lease. But that is not the test here. The test to be applied here is wheth-

er as between McDermott and Blackner the second lease was an extension or renewal of the first, within the intent and meaning of the original operating agreement. And in resolving that question, the language contained in the operating agreement, the relationship existing between the parties, and the background against which the agreement was drafted and entered into must be taken into consideration. Viewed in that manner, it is crystal clear that it was the mutual intention of the parties in entering into such agreement that their rights should continue throughout any lease which should issue as the outgrowth of their joint efforts then being exerted in connection with the preparation and filing of the original application, and otherwise. When all of the facts and circumstances are taken into consideration and given the weight to which they are entitled, it would unduly narrow the scope of the contract to construe it as having application only to the original lease, either during its primary period or during an extended or renewed period of it, but not to a subsequent lease to the same lessee which was the outgrowth of the joint efforts of the parties at the time of the filing of the application for the original lease and at the time of the issuance of such lease.

■ Error is assigned upon the action of the court in admitting certain evidence set forth in the written stipulation filed in the case. Some of the evidence related to statements made and events taking place prior to the execution of the original operating agreement, some related to the acts and conduct of Blackner in violation of the good faith which he owed McDermott in respect to the original lease and the operating agreement, some related to McDermott's effort to secure a new lease in his name, some related to the action of the attorney now representing McDermott in filing an application for a new lease in his name, and some related to the failure of McDermott promptly to tender to Blackner the amount paid as the fee for filing the application for the new lease and the amount paid as the rental for the first year under such lease. The argument is that some of the evidence was inadmissible because all

502

prior understanding between the parties was merged in the written operating agreement. and such agreement cannot be varied by parol evidence, and the further argument is that some of the evidence was in the nature of self-serving declarations. But the very essence of the cause of action pleaded in the complaint was that of a joint enterprise with a fiduciary relation between the parties and the subsequent bad faith on the part of Blackner in violation of his duty toward McDermott in connection with the original lease and the operating agreement; and the defense was in part bad faith on the part of McDermott in violation of the fiduciary relation between the parties, particularily his effort to secure a new lease in his own name and his effort to prevent the issuance of a new lease to Blackner. The evidence was admissible, as the part on which McDermott relied related to the very nub of his cause of action and the part on which Blackner relied concerned itself with the very core of his defense. And no part of the evidence tended to vary or contradict the terms of the written instrument. Neither was any part of it subject to objection on the ground that it was merely self-serving declarations.

The remaining ground of attack upon the judgment is that there was not sufficient evidence to support certain findings of fact made by the trial court. Ordinarily a finding of fact will not be disturbed on appeal unless it is plainly wrong, due regard being had for the opportunity of the trial court to observe the demeanor of the witnesses while testifying, to appraise their credibility, and to determine the weight to be given to their testimony. But no oral testimony was submitted on the trial of this case. It was submitted on the pleadings, exhibits attached to the pleadings, and written stipulation of evidence. And in the absence of oral testimony an appellate court is equally capable with the trial court of examining the evidence and drawing conclusions from it. United States v. Corporation of the President, etc., 10 Cir., 101 F.2d 156; British American Assurance Co. of Toronto, Canada, v.

Bowen, 10 Cir., 134 F.2d 256; Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774. Viewed in that manner, we think that the findings are adequately supported by the evidence and inferences fairly drawn from it.

The judgment is affirmed.