CAPITAL GARAGE COMPANY *v.* MAX L. POWELL ET AL.

May Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 6, 1922.

*Corporations—Dissolution Does Not Terminate Leasehold— Landlord and Tenant—Failure to Pay Rent—Demand of Rent Essential to Right of Re-entry—Tender of Rent into Court—Waiver of Breach of Lease—Abandonment—Principal and Agent—Necessity of Good Faith by Agent in Principal's Business—Presumption of Conformity to Law— Ejectment—Burden on Plaintiff to Show Defendant in Possession When Suit Commenced—Evidence—Presumption As to Continuance of Condition Shown to Exist—Declarations Against Interest—Circumstances Indicating Character of Possession—Immaterial Agreement.*

1. Upon the dissolution of a corporation having an unexpired leasehold estate, the lease is not thereby terminated, as the stockholders succeed to the rights and obligations of the corporation in the estate.

2. Failure to pay rent does not of itself terminate a lease, but to accomplish its termination it is essential to the right of repossession of the demised premises that demand be made for payment of the actual rent due, as required by the rules of the common law, and even after such demand a tenant, when sued in ejectment, may bring his rent into court in accordance with the provisions of G. L. 2130 and relieve himself from forfeiture, notwithstanding an agreement in his lease to deliver possession of the demised premises upon failure to pay the rent when due.

3.  A lessor waives the breach of the conditions of a lease by lessee's non-payment of rent in accordance with its terms, when he accepts as such rent, from another person, the amount due, notwithstanding payment may be made by the latter, not as rent, but as a condition of remaining in possession of the demised premises, as it is immaterial by whom rent is paid, if it is in fact received as rent on behalf of the lessee.

4.  In an action of ejectment, where defendants claimed that the plaintiff, a corporation, had abandoned possession of a garage of which it was lessee, and that the lessor had thereupon accepted the abandonment and leased the premises to them, *held* that the evidence showed that the plaintiff had retained possession of the premises up to commencement of the suit.

5.  A stockholder and director of a corporation, acting as its agent, was bound to use the utmost good faith and loyalty for the furtherance and advancement of its interest, and his possession of property in which the corporation had an interest, in his own right, without the consent of the stockolders, and against their interest, would be a breach of good faith, and he would not be permitted to make a profit for himself in the transacting of its business, and the Court will not presume he did.

6.  The presumption is that every man has conformed to the law.

7.  In an action of ejectment, the burden is on the plaintiff to show that the defendant was in possession when the suit was commenced, but actual possession is not necessary and a claim of title with color thereof is sufficient.

8.  In an action of ejectment, where it was conceded that one of the defendants was in possession of the premises until within two days of the commencement of the suit, such fact warranted the inference that his possession continued, and required the defendants to bring forward evidence that it terminated prior to suit, and there being a conflict in the evidence the question was for the jury.

9.  The declaration in a letter of a deceased lessor, that a certain lease had two more years to run, being against his interest, comes within the principle that such declarations are admissible against those claiming under a declarant, hence in an action of ejectment by the lessee of such lease, where defendants relied upon a forfeiture of the lease, and claimed

under a subsequent verbal lease from such deceased lessor, the declaration against interest was admissible against them.

10. In an action of ejectment to recover possession of a garage, where one defendant claimed that no judgment could be rendered against him because, prior to suit, he had abandoned possession, and a co-defendant had taken possession of the garage and of the personal property therein belonging to the first-mentioned defendant, it was error to exclude evidence offered by the plaintiff that no inventory was taken by such co-defendant when he took possession, as it bore upon the character of the possession taken, whether it was in his own right or that of the other defendant, and was a circumstance to be considered on the question of the claimed abandonment.

11. In an action of ejectment, evidence of an agreement of one of the defendants with a corporation not a party to the suit, relating to the taking over of its book accounts in certain cities, *held* immaterial to any issue in the case and its admission error.

ACTION OF EJECTMENT. Pleas, the general issue and special pleas. Trial by jury at the September Term, 1921, Washington County, *Moulton,* J., presiding. At the close of plaintiff's evidence the court, on defendants' motion, directed a verdict for the defendants, and judgment was rendered thereon. The plaintiff excepted. *Reversed and remanded.*

*H. C. Shurtleff* for the plaintiff.

*Powell & Powell* and *Hale K. Darling* for the defendants.

MILES, J. This is an action of ejectment to recover possession of a garage in Montpelier The case was tried by jury and a verdict was directed for the defendants. The case is brought here on the plaintiff's exceptions.

On January 1, 1919, Thomas J. Heaphy leased the demanded premises to the plaintiff, a Vermont corporation, for the term of five years from the latter date. On April 1, 1920, the plaintiff failed to pay its license tax then due. The defendants claim because of this its charter became forfeited and the plaintiff ceased to exist and its right under the lease terminated.

[1] Without passing upon whether the failure of the plaintiff to pay its license tax falling due April 1, 1920, worked a

dissolution of the plaintiff's charter, it is sufficient to say, upon the defendants' claim that the lease was thereby terminated, that upon the dissolution of a corporation having an unexpired leasehold estate, the stockholders succeed to the rights and obligations of the corporation in that estate. *Cummington Realty Association* v. *Whitten*, a recent Massachusetts case, 239 Mass. 313, 132 N. E. 53, 17 A. L. R. 527 and note, 17 A. L. R. 532.

[2, 3]  The defendants further contend, that, if the failure to pay the license tax did not terminate the lease, still the lease was forfeited for failure of the plaintiff to pay the rent to Heaphy when it fell due. But failure to pay rent does not forfeit and terminate a lease. It may be cause for terminating it; but, to accomplish its termination, it is essential to the right of repossession of the demised premises that demand be made of the actual rent due, as required by the rules of the common law. Even such demand does not so far terminate the lease as to prevent the tenant from bringing his rent into court, when sued in ejectment for the possession of the demised premises, and thus relieving himself from forfeiture. *Rosenberg* v. *Taft*, 94 Vt. 461, 111 Atl. 583. That right is secured to him by section 2130 of the General Laws, and that remedy is not destroyed, either at law or in equity, by failure to pay rent as stipulated in the lease, or failure to deliver possession of the demised premises under a promise in the lease to do so, upon failure to pay the rent when due. *Willard* v. *Benton*, 57 Vt. 286. But we think the evidence tended to show that the rent was paid. Powell testified that when he went into possession of the garage and commenced to run it in his own name, the rent was three months in arrear, and that at some time after taking possession, he had to pay rent in arrear in order to stay there; but that he paid it, not as rent, but as a condition for remaining in possession of the garage. Whatever Powell's reason may have been in paying the rent in arrear, the evidence fairly tends to show that Heaphy received it as rent due from the plaintiff. He thereby waived the breach of the condition of the lease, occasioned by the plaintiff's failure to pay the rent as the same fell due (*Rosenberg* v. *Taft*, *supra*) and since then, so far as anything appears in the case, the rent has been paid according to the terms of the plaintiff's lease, and, though paid by Kenney and Chase, its receipt by Heaphy without complaint and without any action on his part to repossess himself of the garage, has a tendency to show that the same was

received as rent on plaintiff's lease.  "As regards the effect of the receipt of rent as a waiver, it is immaterial by whom the rent is paid, if it is in fact received as rent and on behalf of the lessee." 16 R. C. L. 1133, pars. 653, 656.

[4]     The defendants further contend that they had a right to the possession of the garage, because the plaintiff abandoned its possession, and that Heaphy thereupon accepted the abandonment and leased the premises to them, as he had a right to do. But we think the evidence tended to show that the plaintiff retained the right to the possession of the garage up to the commencement of this suit.  It tends to show that Powell was the only resident director of the Burnell-Faulkner Company, corporation.  He made the original arrangement for the purchase of the stock of the plaintiff for that corporation, and matters in Montpelier, in which that corporation was interested, were left to him to some extent.  Powell testified that he entered into possession of the garage "to continue the business," to enable him to collect certain accounts, some of which were old accounts of the plaintiff.

[5, 6]     Powell being the only resident director of the Burnell-Faulkner Company, and one of its stockholders, his relation to that corporation was such that he was bound to use the utmost good faith and loyalty for the furtherance and advancement of the interest of that corporation.  *Leno* v. *Stewart,* 89 Vt. 286, 95 Atl. 539, Ann. Cas. 1917 A, 509.  The possession of Powell in his own right without the consent of the stockholders of the Burnell-Faulkner Company, and against their interest, would be a breach of good faith, and he would not be permitted to make profit for himself in the transaction of the business of his principal, and the Court will not presume he did.  *Noyes* v. *Landon,* 59 Vt. 569, 10 Atl. 342.  The presumption is that every man has conformed to the law.  *Morse* v. *Bruce's Est.,* 70 Vt. 378, 40 Atl. 1034.  And such is the presumption in this case.

[7]     Powell, however, contends that no judgment can be rendered against him, whatever the judgment may be against the other defendants, because he was not in possession when the suit was commenced.  There is no question but that the burden was upon the plaintiff to show that Powell was in possession when the suit was commenced.  *Evarts* v. *Dunton,* Brayt. 70; *Stevens* v. *Griffith,* 3 Vt. 448; *Skinner* v. *McDaniels,* 4 Vt. 418.  But

actual possession is not necessary. A claim of title with color thereof is sufficient. *McDaniels* v. *Reed,* 17 Vt. 674.

[8]   There is no question but that Powell was in possession of the garage September 19, 1921, claiming a right thereto as against the plaintiff; but on that date he claims to have abandoned the possession not only of the garage and fixtures, but also of supplies belonging to himself; that upon his abandonment of the garage, fixtures, and supplies, the same were taken possession of by the other defendants, since which time he has had nothing to do with their possession; that those defendants entered into such possession without any express contract between them and himself, but under a lease from Heaphy, under which they have occupied the garage with its fixtures, and supplies ever since. This claim was supported by the testimony of Powell. He further testified that Kenney & Chase, the other defendants, had never paid him anything for his property that was left in the garage when he abandoned its possession. The case shows that immediately upon Powell's stepping out the other defendants stepped in, and that the business ran along in connection with the garage, after Kenney & Chase entered, the same as before. Previous to this the plaintiff had demanded possession of the garage and Powell had refused to deliver it to the plaintiff. When Kenney & Chase took possession of the garage they must have known that a suit was soon to be brought by the plaintiff for its possession; for the evidence tended to show that Powell told them all about it and what the plaintiff claimed. The evidence tended to show that Kenney & Chase, at this time, were tenants of Powell of a garage in Burlington. Kenney admitted that he told a Mr. Almon that he had nothing to worry about, and if anybody was in trouble it was Powell. He also testified: "I didn't see where I had anything to worry about."

The plaintiff argues from the foregoing and other circumstances, that the case presents an unnatural course of conduct, wholly inconsistent with the fact that Powell abandoned possession of the garage and his own property, and that Kenney & Chase went into it in their own right; that it rather tends to show that it was a plan put up whereby Powell might hold a right to the possession of the garage, if the plantiff failed to recover in this suit, and might avoid personal liability, if the plaintiff finally prevailed. It may well be asked, why, if Powell did not care to keep possession of the garage himself, he did not

surrender it to the plaintiff when it was demanded, and how did it happen that when Powell was ready to get out the other defendants were ready to step in? Was this purely accidental, or was it prearranged as the plaintiff claims? The plaintiff argues that this was all for the jury. But, if not sufficient to send the case to the jury, it claims that the presumption, arising from the conceded fact that Powell was in possession of the garage up to within two days of the commencement of this suit, that he continued in possession until after its commencement, is alone sufficient to send the case to the jury. Though the effect of this so-called presumption is not all that is thus claimed for it, such conceded fact warranted the inference that his possession so continued and was enough to require the defendants to bring forward evidence that it had sooner terminated. *Sowles* v. *Carr*, 69 Vt. 414, 38 Atl. 77; *Rixford* v. *Miller*, 49 Vt. 319. The question, therefore, of whether Powell was in possession when the suit was brought was for the jury.

[9] We think the exclusion of the declaration in the Heaphy letter was error. It was a declaration that the lease had two more years to run. The defendants objected to its admission on the ground that it was the declaration of one not a party, and to the ruling of the court excluding the declaration the plaintiff excepted. There was an extended discussion between counsel and the court respecting its exclusion, but no other ground of objection was stated by the defendants upon which the court made its ruling. The declaration was that of a deceased person against his interest and comes within the principle that such declarations are admissible against those claiming under a declarant. *Waterman* v. *Moody*, 92 Vt. 218, 103 Atl. 325; *Pope* v. *Hogan*, 92 Vt. 251, 102 Atl. 937; *In re Bugbee's Will*, 92 Vt. 175, 102 Atl. 484. As already stated, the defendants relied upon a forfeiture of the written lease and upon a verbal lease from Heaphy after the forfeiture. There being no forfeiture, there could be no valid lease from Heaphy to the defendants; so the defendants were claiming in Heaphy's right as affected by the lease to the plaintiff, and the declaration against the interest under which defendants now claim was admissible against the defendants, Heaphy being dead.

[10] We think the exclusion of the plaintiff's offer to show by the witness Fred Laundry that no inventory was taken by Kenney when he entered into possession of the garage and per-

sonal property therein, was error.   It had a bearing upon the character of the possession which he was taking, whether it was in his own right or in the right of Powell.   If in his own right, was it natural that he would take possession of another's property, consisting of various items, without taking an inventory of what he was taking, especially where there was no express agreement between himself and Powell for taking his property?   It was a circumstance to be weighed by the jury on the question of whether Powell had abandoned possession of the garage before the suit was commenced.   Moreover, Kenney had testified:  "I have taken inventory in the place there and it is a question of market value at the time."   This was in answer to a question of how much he was to pay Powell for the property he had taken belonging to him.   The evidence offered tended to contradict that statement and was admissible for that purpose.

[11]   Defendants' "Exhibit A," the agreement of Powell with the Burnell-Faulkner Company, for taking over the book accounts of their Burlington |and Montpelier branches, was wholly immaterial upon any issue in the case, and the court erred in receiving it.   For the errors herein pointed out, the judgment below must be reversed. ·

*Judgment reversed and cause remanded.*