CAPITAL GARAGE COMPANY *v.* MAX L. POWELL ET AL.

May Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 5, 1923.

*Evidence—Parol Testimony of Contents of Destroyed Letter—
Landlord and Tenant—Receiving Money as Rent Competent
to Show No Forfeiture Declared—Forfeiture—Demand—
Payment of Rent in Arrears—Witnesses—Cross-Examina-
tion—Inadequate Briefing—Competency of Witness A Pre-
liminary Question for Trial Court—Effect of Cross-Exami-
nation on Question of Competency—Questions Not Raised
in Lower Court—Damages Recoverable Under Statutory
Declaration in Ejectment—Instructions to The Jury.*

1.  Where it appeared that the widow of a deceased lessor had de-
stroyed a letter written by him, which contained declarations
against his interest, and that a witness knew its contents,
there was no merit in an exception to the admission of evi-
dence by such witness of such declarations on the ground that
inability to produce the letter had not been shown.

2.  In an action of ejectment by the lessee of a deceased lessor, where
defendants claimed plaintiff's lease had been forfeited and that
they were subsequent lessees of the premises from the same
lessor, evidence that after the plaintiff took possession under
its lease, the rent called for thereby had ever since been paid,
was competent to show that such lessor had treated money
received by him as rent on plaintiff's lease and had not de-
clared a forfeiture, irrespective of who paid such money, or
for what purpose, how the lessor received and treated such
money being a fact, and not a conclusion, which could be
shown by anyone having personal knowledge thereof.

3.  A landlord cannot assert a forfeiture of his tenant's lease when the
latter is in arrears in his rent merely by permitting another
to enter into possession of the premises under an independent
agreement with the landlord, but must make demand of the
actual rent due in accordance with the common law rule, or

bring ejectment; and, if the latter be resorted to, under G. L. 2130 the tenant may relieve himself from forfeiture by paying the rent in arrears at any time before final judgment.

4. In an action of ejectment by the lessee of a deceased lessor, where defendants claimed that plaintiff's lease had been forfeited and that they were subsequent lessees from the same lessor, after it had appeared that the plaintiff corporation had failed to pay its annual license tax for a certain year, it was proper cross-examination of one of the defendants to inquire whether he wanted to take advantage of such failure.

5. The briefing of an exception to certain evidence, by stating that it was error to allow the witness "to be asked and to answer" certain questions, and citing one case "as to relevancy of negative facts, generally," was too inadequate for consideration.

6. The competency of a witness is a preliminary question for the trial court, and its decision is conclusive unless it appears from the evidence to have been erroneous, or was founded on an error in law.

7. Where the trial court had ruled that a witness was competent to give his estimate as to the damage to plaintiff by reason of having been deprived for a certain period of a garage of which it was lessee, and the witness gave such estimate, the fact that his answers on cross-examination showed that his estimate was pure speculation went merely to the weight of his testimony, and did not affect his competency, or render his evidence in chief on that subject immaterial and irrelevant.

8. A question not raised below, but for the first time when the case is in Supreme Court, will not be considered.

9. In an action of ejectment, where the declaration was substantially in the form provided by G. L. 7472, Form 25, the allegation of damages, "taking the whole profits unto themselves to the damage of the plaintiff," etc., did not limit plaintiff's recovery to the profits actually received by the defendants from the use of the premises, but was broad enough to permit a recovery of the annual value of the premises or the profits that might have been made from the use of them.

10. In an action of ejectment by the lessee of a deceased lessor, where defendants claimed that plaintiff's lease had been forfeited and that they were subsequent lessees from the same lessor, an instruction that if the lessor received payments as rent under the original lease it would thereby be kept alive, regardless of

who made the payments, correctly stated the law, and was not objectionable because it failed to state that the rent must have been paid on behalf of the lessee, such not being the law.

ACTION OF EJECTMENT. Pleas, the general issue and special pleas. Trial by jury at the September Term, 1922, Washington County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case. *Affirmed.*

*Max L. Powell, Hale K. Darling,* and *John W. Gordon* for the defendants.

*H. C. Shurtleff* for the plaintiff.

SLACK, J. This is an action of ejectment, commenced September 21, 1921, to recover possession of what is known as the Capital Garage in the city of Montpelier. The plaintiff, a Vermont corporation, claims title to the demanded premises under a lease from Thomas J. Heaphy, executed January 1, 1919. By the terms of that instrument, Heaphy leased to the plaintiff the premises in question for the term of five years from the date thereof, for the annual rental of eighteen hundred dollars, payable in installments of one hundred and fifty dollars at the end of each month, reserving the right, at his election, to terminate the lease if the lessee failed to pay the rent due at the end of any month for the space of thirty days. By their answer, the defendants, severally, challenge the plaintiff's title on the ground that it forfeited its lease to Heaphy on, or before, January 1, 1921. The defendant Powell says further, by way of answer, that after plaintiff forfeited its lease, and on January 1, 1921, Heaphy leased the premises in question to him, and that he occupied them under his lease, and not otherwise, until September 19, 1921. The defendants, Kenney and Chase, further answering say that, on September 19, 1921, Heaphy leased the premises to them, and that they have been, and now are, in possession under this lease, and not otherwise. The plaintiff had a verdict and judgment, and the case is here on defendants' exceptions.

[1] Thomas J. Heaphy died in a hospital in New York City, October 27, 1921. Before leaving Montpelier to go to the

hospital, he wrote a letter, addressed to his wife and his brother, John Heaphy, in which he said, in substance, among other things, that the plaintiff's lease had two years more to run. This part of the letter was held to be admissible when the case was here before. 96 Vt. 145, 118 Atl. 524. On the retrial, after it appeared that John knew the contents of this letter, and that it had been destroyed by the widow of the deceased, he was permitted, subject to exception, to testify to that part of it above referred to. The only objection now urged against the admissibility of this evidence is that inability to produce the letter was not shown. This, as we have seen, is contrary to the facts. The exception is without merit.

[2] After it appeared that the plaintiff took possession of the premises in question and paid rent, under its lease, John Heaphy testified, in substance, that the rent called for by plaintiff's lease had been paid ever since, subject to defendants' objection and exception that the witness ''hadn't a right to express as a matter of conclusion that the money that they may have received was received as rent under this lease. Now that's the question, was the rent received under this lease, and we say that's a conclusion that he has no right to draw;'' and he testified further, that the rent paid under that lease had been $150 a month ever since the lease was executed, subject to the objection that this was the witness's conclusion and that was a matter for the jury to decide on all the evidence. It should be borne in mind that the objection urged against the admissibility of this evidence is not that it was the witness's conclusion that the money was *paid* under plaintiff's lease, but that it was *received* under its lease. It was competent to show that the lessor treated money received by him as rent on plaintiff's lease, as tending to show that he had not declared a forfeiture of such lease, and this, too, irrespective of who paid such money, or for what purpose. See 96 Vt. 145, 118 Atl. 524. That he treated such money as rent due under plaintiff's lease, if he did so treat it, was a fact and not a conclusion, and even though he so treated it as the result of a wrongful conclusion, its tendency to show that he had not declared a forfeiture (the only question on which it had any bearing) was the same. It was competent to show by anyone who had personal knowledge of the fact how the money was received and treated. That the witness had such knowledge does

not appear to be questioned, and the evidence clearly tends to show such to be the fact. It appeared that he was intimately connected with Thomas' business affairs during the last years of the latter's life; that he not only knew about plaintiff's lease, but that he collected all, or most, of the rent received for the premises in question ever after that lease was executed, and kept the accounts relating thereto.

[3] It appeared that when Powell took possession of the premises there was three months' rent in arrears. The defendants contend that, in these circumstances, the action of Heaphy in putting Powell into possession under an independent agreement between him and Powell was an enforcement of forfeiture of plaintiff's lease. But Heaphy could not assert a forfeiture of plaintiff's lease in that manner. *Willard* v. *Benton,* 57 Vt. 286. He must proceed according to the rule of the common law, unless he chose to bring ejectment; and if he resorted to ejectment, the plaintiff might relieve itself from the forfeiture by paying the rent in arrears before final judgment. G. L. 2130; *Rosenberg* v. *Taft et al.,* 94 Vt. 458, 111 Atl. 583. The law abhors forefeitures, and will not enforce one when a tenant in arrears comes forward with the rent on demand, or if ejectment is brought, before final judgment therein. If a landlord could enforce a forfeiture simply by leasing the premises to another, when rent was in arrears, he could ignore the requirements of the common law, and, also, deprive the tenant of his right, under the statute, to redeem.

[4] After it appeared from defendants' evidence that plaintiff failed to pay its annual license tax April 1, 1920, the defendant Powell was asked, on cross-examination, "Did you want to take any advantage of this Capital Garage Company's failure to pay its annual license tax to the State of Vermont, for one year?" and, subject to exception, he answered, "I waive none of my rights." Since Powell was a party, this was proper cross-examination. Moreover, it is not apparent how this evidence could have harmed the defendants as it was manifest throughout the trial that they intended to take such advantage of this circumstance as they were entitled to.

[5] John Heaphy was permitted to testify in rebuttal, subject to exception, as follows: "Q. Did he" (meaning the lessor) "ever tell you that he wanted to sell that garage? A. No,

no, he didn't say anything.   Q. Did you ever hear him make any statement after the year 1918, or after January 1, 1918, as to whether he would rent that garage to anybody or not?   A. Yes. Q. And when?   A. Why it was right after the Burnell-Faulkner Co. got out of there.   Q. What was it he said about letting the property to somebody else at that time?   What did he say on that occasion about renting the garage to anybody else?   A. He said that he couldn't agree to let it to anybody, because he didn't want to become involved in any litigation.''   These questions and answers are treated in the defendants' brief as standing alike, and all that is there said concerning the admissibility of this evidence is. that, it was error to allow the witness ''to be asked and to answer'' these questions, and *Scott* v. *Bailey*, 73 Vt. 49, 50 Atl. 557, is cited ''as to relevancy of negative facts, generally.''   This briefing is too inadequate to be considered by this Court.   *In re Chisholm's Will*, 93 Vt. 458, 111 Atl. 583.

The plaintiff called Ernest F. Dillon as a witness, and after testifying that he was an automobile mechanic, and one of the original stockholders, and the manager, of the plaintiff; that he was connected with its business during the time that it occupied the demanded premises, from December 1, 1913, to November, 1919; that the garage was in a very good location, near the State House and the Pavilion Hotel, and got the best class of tourist trade, and the best winter storage business in town; that it had three floors connected by elevator, and could handle around seventy-five cars; that during the year ending in November, 1919, the company employed in its business eighteen to twenty men in the summer and eight to twelve in the winter, and had work for all of them, and that its net earnings that year were around $3,500 to $4,000, he was asked, ''What would you estimate the damage to be to the corporation by reason of being deprived of the use of that garage from July 29, 1919, until the present time?'' and, subject to defendants' exception that the witness had not shown that he was competent to answer that question, and that the evidence was immaterial and irrelevant, answered, ''I should estimate it at around $8,000.''   It is now urged that this evidence was inadmissible because, ''The witness did not show himself competent to testify and the changed conditions of business and competition made his estimate entirely speculative.''

[6, 7]   The competency of the witness was a preliminary question for the trial court; and its decision is conclusive unless it appears from the evidence to have been erroneous, or was founded on an error in law.   *Brown* v. *Mut. Fire Ins. Co.*, 92 Vt. 272, 102 Atl. 1042; *Brown* v. *Aitken et al.*, 90 Vt. 569, 99 Atl. 265; *Maughan* v. *Estate of Burns*, 64 Vt. 316, 23 Atl. 583; *Lamoille Valley R. R. Co.* v. *Bixby*, 57 Vt. 548.   By permitting the witness to testify, the court impliedly held that he was competent, and this holding is fully sustained by the previous testimony of the witness, stated above.   In the course of his regular cross-examination, the witness testified that conditions in business and competition were not the same during the time in question as when he was connected with the plaintiff's business, prior to November, 1919, and testified that his estimate was pure speculation.   The defendants rely upon this evidence to support their claim that he was incompetent to give the answer under consideration.   What developed on cross-examination bore upon the weight to be given to the witness's testimony, but it came into the case too late to affect the court's decision, already made, as to his competency.

The same evidence, drawn out on cross-examination, is relied upon to support defendants' claim that the witness's testimony as to damages was immaterial and irrelevant because speculative.   Here, too, the facts appearing in cross-examination might affect the weight of the witness's evidence given in chief, but they could not affect the court's previous ruling as to the admissibility of that evidence.

[8]   The defendants virtually admit that the rule of damages under G. L. 2122 is correctly stated in *Powers* v. *Trustees of Caledonia County Grammar School*, 93 Vt. 220, 106 Atl. 836, but they contend that the witness Dillon ''jumbled'' the profits which might have been made from the use of the premises with those that may have been derived from skill of management and capital invested.   The question and answer under consideration is not open to this objection.   The question called for the damages the plaintiff sustained by being ''deprived of the use of this garage'' for the time named, and it does not appear that the answer went beyond that.   Moreover, this question was not raised at any stage of the trial below, and that this Court will not consider questions here raised for the first time has been too

frequently, and too recently, announced to require citation of authorities.

The application of the rule last stated disposes of the next question discussed by defendants, namely, that it did not appear that plaintiff used elsewhere, in diminution of its damages, such capital and skill as it would have employed in its business if it had had possession of these premises.

[9]   The defendants excepted to the charge of the court on the question of damages on the ground that, under its declaration the plaintiff could recover in excess of nominal damages only such profits as the defendants actually received from the premises. In substance, the declaration is in the statutory form. G. L. 7472, Form 25. The allegation of damages is, "taking the whole profits unto themselves to the damage of the plaintiff," etc. This allegation neither in terms, nor by implication, limits plaintiff's recovery to the profits actually received by the defendants from the use of the premises. It is broad enough to permit a recovery of the annual value of the premises or the profits that might have been made from the use of them. The charge on this subject was as favorable to the defendants as they were entitled to. What is here said disposes of a similar question raised by defendants' motion for a verdict.

[10]. The court charged the jury as follows:   "If Heaphy received rent under the lease this would be evidence that the lease was thereby kept alive, regardless of who paid the rent. As regards the receipt of rent as a waiver, it is immaterial by whom the rent is paid, if it is in fact received as rent. So if Heaphy received payments as rent under this lease, whether from Powell or someone else, that would keep the lease alive." This was excepted to because of the court's failure to charge in that connection, "that the rent must be paid on behalf of the lessees as rent under the lease from Heaphy to the Capital Garage Company. * * * * or if not paid on behalf of the lessees under the lease, at least it must be paid as rent under the lease by the person paying it," to which the exceptants have added in their brief, "In order to bind the person paying as a party to the lease." To the proposition as thus stated, we assent, but, as already seen, this is not an attempt to bind the defendants as a party to the lease. What has been said concerning the receipt of rent by Heaphy fully covers, and disposes of, this ex-

ception.   The defendants insist, however, that the charge is contrary to the law as declared in the case, when previously here. We then said, quoting from 16 R. C. L. 1133, ''As regards the effect of the receipt of rent as a waiver, it is immaterial by whom the rent is paid if it is in fact received as rent on behalf of the lessees.''   While the court did not, in terms, tell the jury that the rent must be received *on behalf of the lessees,* such is the fair meaning of the language used.   But the court's omission of these words was not excepted to.   The defendants claimed then, as they now claim, that the money must be *paid* on behalf of the lessees, and the exception was because of the court's failure to so charge.   Such is not the law, nor can the language of the former opinion be so construed.

*Judgment affirmed.*