CAPITAL GARAGE CO. *v.* MAX L. POWELL ET AL.

October Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1925.

*Ejectment—New Trial—Recovery on Supersedeas Bond—Best Evidence Rule.*

1. In action on supersedeas bond on petition to Supreme Court for new trial of action of ejectment, plaintiff *held* not limited in damages to "fair rental value" during time possession was withheld, but could also recover for lost profits.

2. In such action, testimony of witness as to loss of profits during time execution of writ of possession was stayed upon filing of supersedas bond, *held* admissible against objection that it was not the best evidence, the general rule of evidence invoked having been relaxed where evidence is result of voluminous facts. or inspection of many books and papers, examination of which could not conveniently take place in court.

ACTION OF CONTRACT on supersedeas bond, the only question involved being as to amount of intervening damages. Trial by jury at March Term, 1924, Washington County, *Moulton*, J., presiding. Three special verdicts and judgment for plaintiff. The defendants excepted. The opinion states the case. *Affirmed.*

*John W. Gordon* and *Max L. Powell* for the defendants.

*H. C. Shurtleff* for the plaintiff.

STATEMENT BY WATSON, C. J. The ejectment case, *Capital Garage Co.* v. *Max L. Powell, et al.*, (97 Vt. 204, 122 Atl. 423), to recover possession of the Capital Garage, was decided by this Court at the October Term, 1923, affirming the judgment in the court below in the favor of the plaintiff company to the effect that it was entitled to the possession of the demanded premises. Based on that judgment a writ of possession was issued October 13, 1923, and the same was delivered to

a sheriff for execution. On October 18, Powell brought to the Supreme Court a petition for a new trial in that case. In connection with the signing of the petition and at the same time, the Chief Justice of this Court signed a supersedeas, staying the execution of the writ of possession until further order of Court. This petition, being heard at the November Term of Court, was dismissed with costs on December 27, 1923, and is reported in 97 Vt. 328, 123 Atl. 200. Thus by force of the supersedeas the Capital Garage Company was kept out of the possession of the demanded premises from October 18 to December 27, 1923. The present action is based on the supersedeas bond taken by the Chief Justice by way of security under G. L. 2304, at the time of issuing the petition, and conditioned, in case of failure to maintain the petition, etc., for the payment to the adverse party "the intervening damages and costs accruing to him (it) by reason of such petition."

WATSON, C. J. [1] The defendants conceded their liability on the bond in suit. All questions raised related to the damages which the plaintiff was entitled to recover. The jury returned three special verdicts: One for plaintiff to recover $230.68 for attorney's services in defending the petition for a new trial; one for $650 for loss of the possession of the premises (demanded) from October 18 to December 27, 1923; and one for $23.08 for taxable costs in the petition for a new trial, which last was conceded by the defendants. Before judgment on the verdict defendants made a motion to exclude the sum of $650 found by the jury, for various reasons stated. Defendants also moved to exclude from the judgment the $230.68 allowed for attorney fees. As to the latter sum the court sustained the motion. As to the former sum the motion was overruled, to which defendants excepted. Thereupon judgment was rendered for the plaintiff to recover the sum of $673.05 and costs, to which defendants also excepted. Although some questions as to the admissibility of evidence are presented and will be noticed later, the main question for review is the one allowing as damages the said sum of $650 as loss of profits to the plaintiff in its being kept out of possession of the garage from October 18 until December 27, 1923. As to this the defendants' contention was and is that the measure of damages was not the loss of profits, but "the fair rental value." This same legal question was pre-

sented in the supplemental action, *Capital Garage Company* v. *Powell* (reported in 98 Vt. 303, 127 Atl. 375), and there fully considered and determined to the contrary of the defendant's contention then and now asserted. The real parties in interest are the same, the defendant American Fidelity Company being but a surety for defendant Powell concerning whose financial ability no question is made. Without considering whether the doctrine of "the law of the case" is here applicable, the American Fidelity Company not being a party to the former action, we are not disposed to depart from our holding there made as to the measure of damages, and the question will not now be further examined. There was no error in the ruling on the motion.

What we have here said is decisive against defendants' exceptions to the charge and to the failure to charge, and to the exclusion of evidence offered by defendants to show that the tenant of the premises at the time of the trial below, had them on the basis of $75 a month rent during the winter months, increased to $150, during the summer months—all of which exceptions were grounded on the same erroneous idea as to the measure of damages.

Ernest F. Dillon, one of the stockholders in the plaintiff company and a witness called by it, testified that he worked for Leo Johnson in the same building during the entire year of 1923 up to December 5, when he quit work; that Johnson was doing a general garage business there during that time as proprietor. In direct examination the witness was asked a question as follows: "Q. Having in mind that time which the court has indicated (from October 18 to December 27, 1923), what would you say was the damage to the Capital Garage Company for not having the garage during that time, being kept out of it?" To this defendants objected for that the competency of the witness had not been shown, and also that it was not the rule of damages in this case. The Court having stated that they did not find the witness qualified, instead of that question being pressed, the witness was examined by counsel on both sides at great length on the preliminary question. In such examination but near the close, plaintiff's counsel asked questions and they were answered by the witness: "Q. You say you were bossing the workmen or foreman of the gang, just what was your position there? A. Well, I had to oversee and see that the work went out properly and that the charges were made properly, and nothing out by—

in another sense of the word—to recheck the stockman, the stockman was supposed to have a small slip go with every part, but at times, as Mr. Gordon said, that stockman would be out pumping a quart of oil or five gallons of gas, and so that's why Mr. Johnson appointed me to see that none of these things slipped past the stockman. In another sense of the word, I was a check on the stockman. Q. And you said something about checking the help too? A. Yes, to see that they accounted for 9 hours, and didn't overcharge anybody, or undercharge them. Q. Now, in this line of work that you have been telling us about, that you had oversight of keeping a check on, how much business to the best of your recollection was done from October 18 up to the time you left, how much a month—how much in fact?" Defendants objected to this last question on the ground that the books of Mr. Johnson, the sales account, were all accessible, that the books, the records, and everything were accessible, for which reason the evidence was not admissible. The question was ruled to be competent, and exception saved to defendants. But instead of that question being answered, another question was asked: "Q. How much business in fact was done during that time? Court. This is the part he had oversight of? Q. Yes, the part you had oversight of? It don't have reference to the sales of automobiles. Court. No, I understand it covers just what the question states. A. Well all I could do was give an estimate because I kept no books. Q. Yes, estimate it to the best of your ability, from what you saw?" Defendants' counsel then said, "To this question we wish to have our objections and exceptions apply." Court. "Surely. It is his best judgment on this point."

The witness was told that the question meant his best judgment as to sales from accessories and labor. The court saying to him, that is the part that you had personal knowledge of—"your best estimate and knowledge of it." The witness then answered: "Why, I should imagine around $2,500 to $3,000 a month gross, that is, the labor and just estimating the parts that I knew were —." The witness further testified that he was consulted about the buying of accessories, that a set amount of tires would come month by month. "Q. Well, you have bought a great many tires? A. Yes sir. Q. And do you know at that time what they were selling for, what the profit was? A. Approximately." Counsel for defendants then said, "Well, this is all under objec-

tion and exception, as I understand it?'' The court answered, ''You have such exception as *your objection calls for.*'' The witness, answering, stated there was a certain per cent. of profits on tires at that time—approximately fifteen per cent. He further stated that as to the profits on the accessories ordered as the stock clerk needed them, it would be conservative to call it twenty per cent.; that there was a profit figured on labor, but he did not know what they figured it; that the employees were paid from thirty-five cents an hour to seventy-five or eighty cents an hour, and for their labor customers were charged one dollar an hour.

[2]   It should be borne in mind that the exceptions now particularly under consideration go only to the mode of proof, being based on the legal ground that the testimony of the witness was not the best evidence, as the books, the sales account, the records and everything of Mr. Johnson were accessible. It is enough to say in answer to this objection that the general rule of evidence here invoked has been relaxed ''where the evidence is the result of *voluminous facts,* or of the inspection of *many* books and papers, the examination of which could not conveniently take place in court.'' 1 Greenl. Ev., § 93; *Burton* v. *Driggs,* 29 Wall. (87 U. S.) 125, 22 L. ed. 299. The exceptions are without force.

*Judgment affirmed.*