WYOMING-INDIANA OIL & GAS CO. v.
H. R. WESTON, ET AL.
(No. 1705; January 25, 1932; 7 Pac. (2d) 206)

For the appellants there was a brief by *Ellery and Spencer,* of Cheyenne, Wyoming, and oral argument by *Mr. C. R. Ellery.*

528

For the respondent there was a brief and oral argument by *Thos. F. Shea,* of Cody, Wyoming.

530

RINER, Justice.

This is a proceeding by direct appeal to review a judgment rendered by the District Court of Big Horn County in favor of the Wyoming-Indiana Oil and Gas Company, a dissolved corporation, hereinafter referred to as the "plaintiff", and against H. R. Weston and Wm. L. Walls, subsequently herein mentioned as the "defendants", or by their respective names, and also against the defendant Continental Oil Company.

The action was originally brought in Park County by the plaintiff and removed on change of venue to Big Horn County. Those made parties defendant in the litigation were H. R. Weston, Wm. L. Walls, and Continental Oil Company aforesaid, and D. E. Hollister, Sarah I. Hogg, W. Telfer Hogg, John L. Hogg and Mary A. Hogg. The five persons last named, with the exception of Sarah I. Hogg, seem to have been disregarded as the case progressed.

Summarized, plaintiff's amended petition alleges: That plaintiff existed as a Wyoming corporation from about January 17, 1918, until August 18, 1922, on which date it voluntarily dissolved, having at that time as its directors W. F. May, M. J. Dayer, W. B. Raymond, D. E. Hollister and W. T. Hogg; that owing to the death of Hogg, on May 18, 1922, and the resignation of Hollister prior to the commencement of this action, the other directors named are now the trustees of the dissolved corporation; that in February 1920, W. T. Hogg, acting as agent for the plaintiff, entered into an oral agreement with the defendants Walls and Weston that all three of these parties should secure a state oil and gas prospector's lease on Section 16, Township 51, North of Range 100 West of the Sixth Principal Meridian in Wyoming, which should be taken and held in Weston's name, as trustee for them, each to own an undivided one-third interest therein or in any renewal thereof; that such a lease so held was obtained February 28, 1920; that previous to the expiration of said lease in February 1921,

the said Walls, Weston, Hogg and Hollister agreed further that in consideration of plaintiff's expending certain money for the development of the lease and its payment of the 1921 rental therefor, it should have an additional two-ninths interest therein, the rentals thereafter to be paid five-ninths by plaintiff and four-ninths by Weston and Walls; that plaintiff made the expenditure and payment thus agreed; that as evidence of the interest of the plaintiff in the enterprise, Weston thereupon assigned to Hollister a one-third interest in said lease and to W. T. Hogg a two-ninths interest therein; that in receiving these assignments Hollister and Hogg, as President and Vice President respectively, were acting for plaintiff, and though never formally ratified by plaintiff, their acts in the premises were always considered as for plaintiff's benefit and the interests thus taken as belonging to it; that during the years 1920-1923 inclusive, plaintiff paid its share of the rentals on the lease, as agreed, neither Hogg nor Hollister personally contributing anything of value to the maintenance of the lease or claiming any interest therein.

Plaintiff's pleading also avers in substance, that in February 1924, the lease was again renewed, and thereafter the defendants agreed with the defendant Sarah I. Hogg that she should be a one-fifth owner of said lease in consideration of her paying all the rental fees for 1924 and subsequent years; that plaintiff and its trustees knew of this arrangement and assumed it to be for the benefit of all parties interested in the lease, as neither Weston nor Walls, from 1924 onward, ever contributed anything toward the rental payment; that Sarah I. Hogg, during the years 1925, 1926 and 1927, continued to pay such rental, which fact was known to plaintiff and its trustees; that no claim was ever made up to September 12, 1927, by the defendants that the agreement with Sarah I. Hogg was not for the benefit of all parties interested in said lease, nor was ever any demand made during 1924 or thereafter on plaintiff or its trustees for the payment of plaintiff's pro

rata share of said yearly rentals, which at all times plaintiff and its trustees were ready and willing to pay; that knowing the rentals were being paid by Sarah I. Hogg, neither plaintiff nor its trustees tendered payment thereof; that by reason of plaintiff's payment of the rental fees as agreed during the years 1920 to 1923 inclusive, and also expenditure of money for improvements on the lease, the parties interested were enabled to get the lease renewed and such payments and expenditures were important factors in keeping the lease in force until the arrangement made with Sarah I. Hogg; that knowing the rentals were being paid, neither plaintiff nor its trustees made any inquiry concerning the status of the matter until 1927, when its trustees heard rumors that the defendants had made an operating agreement with the Continental Oil Company aforesaid covering said leased lands; that thereupon correspondence between Hollister, plaintiff's trustee, and Weston ensued, resulting on September 12, 1927 in Hollister's being advised by Weston, for the first time, that plaintiff had no interest in the lease; that plaintiff admits that Sarah I. Hogg is entitled to said one-fifth interest in said lease, the other interests held being: the plaintiff a twenty/forty-fifths and defendants Weston and Walls a sixteen/forty-fifths therein.

The pleading then alleges on information and belief the receipt by Weston and Walls of a money payment and the accrual of royalties as the consideration passing from the Continental Oil Company for said operating agreement, the operations under which agreement having resulted in a proven oil well on said leased lands; that plaintiff does not question the interest held by the said Continental Oil Company, but asserts that any proceeds or royalties accruing to Weston and Walls should be held in trust, to be disposed of pursuant to the decree herein; that the defendants now claim to own the entire lease, subject only to the interests of Sarah I. Hogg and the Continental Oil Company. It was prayed that the defendant Weston be required to con-

vey to plaintiff a twenty/forty-fifths interest in the lease, and that the defendants be required to account to plaintiff for any profits received by them by virtue of the operating contract with said Continental Oil Company.

The answer of the defendants was in effect a general denial, coupled with the defense of laches on the part of plaintiff in asserting its alleged rights. That defense was put in issue by a reply filed by the plaintiff.

The case was tried to the court without a jury, with the result, in brief outline, that the court found that the allegations of the plaintiff's amended petition were true, entitling it to the relief prayed; that there is now and ever since the beginning of the year 1921 there has been, a joint adventure between plaintiff and the defendants Weston and Walls under which Weston, as trustee for the joint adventurers, took title to a state oil and gas lease on the property described hereinabove, obtaining renewals and continuations of said lease for their mutual benefit; that plaintiff has at all times paid its pro rata share of the rentals due on the lease and fulfilled its obligations arising out of the joint adventure and the lease; that the profits of the joint adventure should be divided as follows, to-wit: to the plaintiff a five-ninths interest and to Weston and Walls jointly a four-ninths interest; that on June 7, 1927, the said H. R. Weston, as trustee for said joint adventurers, entered into an operating agreement with the defendant Continental Oil Company, whereby the latter agreed to drill the aforesaid lands and to deliver to Weston two and one-half per cent. in value of all oil and gas produced from said lands; that as further consideration for said agreement the Continental Oil Company has paid to the said defendants the sum of $250 and also on or prior to March 14, 1930, the sum of $517.80, as profits accruing on said lease in consequence of the producing well it drilled and is now operating on said property; that said defendant should account to plaintiff for its interest as above found in said sums of money and in all moneys or profits received from or that

may be received from said lease after March 14, 1930. A decree was entered in accordance with these findings, with sundry provisions for its enforcement and costs. From this decree the defendants have prosecuted this appeal.

A careful examination of the proofs submitted to the court by the parties leads to the conclusion that the facts involved are very little in dispute, and that the allegations of plaintiff's amended petition, as recited in summary above, were established thereby.

For the defendants it is said that plaintiff's pleading does not allege a joint adventure agreement or enterprise between plaintiff and Weston and Walls, nor does the evidence establish the same, and hence the decree of the District Court is erroneous for so finding and adjudging. But it would seem that in previous utterances by this court sufficient has been said concerning the nature of a joint adventure to render a solution of this point easy.

In Hoge v. George, Adm., 27 Wyo. 423, 200 Pac. 96, 99, 18 A. L. R. 469, this court, referring to 23 Cyc. 452, said:

"A joint adventure has been defined as an enterprise undertaken by several persons jointly. (23 Cyc. 452.) Other definitions, similar in meaning and alike in their simplicity, may be found in National Surety Co. v. Winslow, 143 Minn. 66, 173 N. W. 181; Fletcher v. Fletcher, 206 Mich. 153, 172 N. W. 436, 440; McRee v. Quitman Oil Co., 16 Ga. App. 12, 84 S. E. 487. Where the existence of the relationship is in issue, and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of the enterprise for their joint profit, the question is preeminently one for a jury. (Van Tine v. Hilands, (C. C.) 131 Fed. 124; Brady v. Colhoun, 1 Penr. & W. 140 (Pa.))."

In the same decision, quoting from Goss v. Lanin, 170 Ia. 57, 152 N. W. 43, previously cited by the court in Reece v. Rhoades, 25 Wyo. 91, 165 Pac. 449, 453, there also appears the following language:

"It is true that it is not necessary that there should be a specific formal agreement to enter into a joint enterprise,

or that the interests of the parties should be definitely settled in such agreement, or that there should be a formal agreement as to sharing in the profits. If there be a joint enterprise proven, either by direct evidence of a mutual agreement to that end or by proof of facts and circumstances from which it is made to appear that such enterprise was in fact entered into, the law fixes their rights.''

Discussing a situation where it was shown that the parties were co-owners of certain cattle and plaintiffs had expended money and both of the parties time and labor jointly in caring for and providing feed for them, and defendants were claiming sole ownership to the exclusion of the plaintiffs, specifically declaring that such situation authorized equitable relief, in Reece v. Rhoades, supra, it was remarked:

''If not strictly a partnership, the relation between the parties as to the cattle might not improperly be considered and treated as a joint adventure, and it would be immaterial that the court called it a partnership, for a joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law; the principal distinctions being that a joint adventure usually relates to a single transaction, though it may comprehend a business to be continued for a period of years, and that one party may sue the other at law for a breach of the contract or a share of the profits or losses, or for contribution for advances, without, however, precluding a suit in equity for an accounting, or for dissolution. And the contract need not be express, but may be implied from the conduct of the parties. (23 Cyc. 453, 455, 461; Goss v. Lanin, 170 Iowa 57, 152 N. W. 43; Saunders v. McDonough, 191 Ala. 119, 67 So. 591; McRee v. Quitman Oil Co., 16 Ga. App. 12, 84 S. E. 487.) The principles controlling the relation are stated on pages 455 and 456 of 23 Cyc., and in Goss v. Lanin, supra. In such a joint venture fiduciary relations are created between the parties, as in a partnership; and neither of the parties is authorized to appropriate the common property to his own use, without the consent of all his associates, or to deal therewith so as to secure an unfair advantage over those interested with him.''

See also Harney, Admr. v. Montgomery, 29 Wyo. 362, 213 Pac. 378, 384; Fried et ux. v. Guiberson, 30 Wyo. 150, 217 Pac. 1087.

Within the pronouncements of these cases it is clear that sufficient facts were pleaded by plaintiff to allege a joint adventure in which the plaintiff and defendants were interested and in which they were to share the profits, and there was certainly sufficient evidence submitted to it to enable the District Court to find that such an enterprise in fact existed. There was proof that W. T. Hogg and Hollister were acting for plaintiff and not for themselves personally. And 2 Fletcher Cyc. of Corp., 1802, states that, "a corporation may enter into a joint venture with an individual, where the nature of the contract is in line with the business its charter authorizes." So also in Louis Werner Sawmill Co. v. Vinson & Bolton, 220 Ala. 210, 124 So. 420, 421, where the defendant's corporate charter showed no power to engage in business in partnership with any other corporation or person, the court said:

"This status of defendant's corporate power did not suffice to deny a recovery by plaintiffs for the reason that— to quote Corpus Juris 14a, 293—'notwithstanding a corporation has no power to enter into a partnership it may under a joint adventure with others transact any business which is within the scope of its legitimate powers and thereby become liable on account of the fiduciary relation thus assumed, and a corporation may in furtherance of the object of its creation contract with an individual, although the effect of the contract may be to impose upon it the liability of a partner,' and we take it to be a matter of course that a corporation may employ another to act for it within the scope of its charter powers and become liable for what its agent so employed does in pursuance of its agency."

There was evidence that the defendants and the plaintiff thus represented had jointly undertaken the enterprise of obtaining an oil and gas prospector's lease from the state on the land in question, each having different interests therein, which lease, through the expenditure of the exer-

tions and money of the parties in its development, was to be renewed year after year until it could be disposed of to the advantage and profit of all concerned.

It is urged, also, that even if a joint adventure was established between the plaintiff and defendants by the proofs, then it is also established that the plaintiff, by its voluntary dissolution, abandoned and repudiated the contract; that plaintiff also terminated it because a joint adventure, like a partnership, is dissolved by the withdrawal or death of any member.

Certainly it is not the modern view of the law that a corporation may, by voluntary dissolution, relieve itself of the obligations incurred by reason of its entering into a contract when it was a going concern. 14a C. J. 1154, § 3810, says:

"The modern rule is that dissolution has no other operation upon a corporation's contracts than the death of a natural person has upon his; and accordingly, broadly speaking, dissolution does not annul the existing contracts of a corporation; valid contracts survive dissolution, especially where such survival notwithstanding the dissolution of the corporation has been contemplated, unless, of course, such contracts are otherwise discharged independently of the fact of the dissolution of the corporation or by the nature of the case a dissolution must operate as a discharge of the particular contract. A solvent corporation cannot by voluntary dissolving cancel or terminate its executory contracts, and while the corporation cannot be compelled specifically to perform, it may be compelled to respond in damages for their breach."

So in 8 Thompson on Corporations (3 Ed.) 700-701, §§ 6513, 6514, citing many cases, it is declared that:

"Generally the obligations of corporations upon their contracts do not cease with dissolution. * * * The general liability of corporations on contracts is not affected by dissolution; and this is true whether the dissolution is voluntary or involuntary. * * * And the obligations of a corporation to perform the conditions of a lease were held not

extinguished by its dissolution, in the absence of a provision to that effect. The surety of the corporation may not set up dissolution as a defense. It is well settled that corporations may make contracts extending beyond the period of their existence, and that dissolution will not annul such contracts. * * * Very clearly debts due to the corporation are not extinguished by dissolution.''

The law of this state governing the dissolution of corporations (Compiled Laws of Wyoming 1920, c. 349), appears to be in harmony with the views expressed in the texts quoted above. Section 5441 of that chapter gives the trustees of a dissolved corporation—

''full power to settle the affairs of the same to sue for and collect the debts and moneys due the corporation, or to compound and settle the same as they may deem best; to have, hold, reserve, sell and dispose of property, real and personal, of every such corporation dissolved, to adjust and pay all the debts of the corporation dissolved, to divide the residue of the moneys and property belonging to the corporation dissolved, after payment of debts and the necessary and reasonable expenses, among the stockholders holding stock in such corporation, in proportion to the amount of stock of each stockholder paid up.''

Authority is thus given the trustees of a dissolved corporation to enforce its contractual rights and meet its obligations which have been created prior to its dissolution, and this authority would not appear to be impaired by the fact that some considerable time may necessarily elapse before the duties so imposed upon the trustees can be fully performed. It would seem clear that the law does not contemplate a sacrifice of the interests of either creditors or stockholders in such rights and obligations by the mere fact of dissolution.

It is stated in the note appended to the case of Cummington Realty Associates v. Whitten (239 Mass. 313, 132 N. E. 53), in 17 A. L. R. 534, that:

540

"The American courts have uniformly held, in the few instances in which the question was involved, that a lease to a corporation is not terminated by the dissolution of the corporation."

Reference is made to the following cases: Re Mullings Clothing Co., (C. C. A.) 238 Fed. 58, petition for certiorari denied 243 U. S. 635, 61 L. Ed. 941, 37 Sup. Ct. Rep. 339; Cummington Realty Associates v. Whitten, supra; People v. National Trust Co., 82 N. Y. 283. To this list may also be added the case of Capital Garage Co. v. Powell, 96 Vt. 145, 118 Atl. 524.

There is no reason apparent why a dissolved corporation, through its trustees, should not ordinarily have the benefits resulting from a contract previously made—in the instant case, a contract of joint adventure—as well as be compelled to bear its burdens. Further, in the case at bar the proof is uncontraverted that months after the dissolution of the plaintiff corporation was an accomplished fact, its trustees paid its pro rata share of the rental needed for the renewed lease by a check dated April 4, 1923, signed "Wyoming-Indiana Oil and Gas Company, by D. E. Hollister, Trustees," carrying on its face the statement, "5/9ths rent on Oregon Basin lease," payable to H. R. Weston and endorsed by him. No question was made by defendants concerning the effect of dissolution of the plaintiff when this check was received and cashed. Nothing was said relative to the personal nature of the joint adventure with plaintiff being such that dissolution would destroy it. Manifestly all parties considered that the pro rata share of the rental paid thus by its trustee was quite as satisfactory in continuance of the enterprise as if paid by the plaintiff in its corporate capacity. In brief, all parties elected to treat the enterprise as continuing, notwithstanding plaintiff's formal dissolution.

Something is said concerning the failure of the corporation or its trustees to pay its share of the rentals during the years 1924 to 1927 inclusive, but the defendants, them-

selves, were not required to pay their share of the rentals during these years. Additionally, the proof is that no demand was ever made by the defendants or either of them on the trustees to make these payments; that the plaintiff's trustee Hollister knew that Sarah I. Hogg was paying the rent during all those years and that there was, therefore, no occasion to transmit a check for it. The defendants made the arrangement whereby Mrs. Hogg was to have a one-fifth interest in the lease in consideration of her paying these rentals, and plaintiff's trustees, with knowledge thereof, acquiesced in what was done. The plaintiff originally, and later through its trustees, appears to have been at all times willing and able to bear its share of the burden of the contract of joint adventure. No logical reason appears which would prevent it to share also in the profits resulting from the undertaking.

The rights acquired by any party to such an enterprise cannot ordinarily be forfeited by his co-adventurers without notice to him. As said by 33 C. J. 850:

"A joint adventure cannot be terminated by one or more of the parties to it, even if a valid reason exists for doing so, without giving notice of the termination to the other party or parties."

See also Saunders v. McDonough, 191 Ala. 119, 67 So. 591; Dike v. Martin, 85 Okla. 103, 204 Pac. 1106; Kirkpatrick v. Baker, 135 Okla. 142, 276 Pac. 193; Edwards v. Johnson, 90 S. Car. 90, 72 S. E. 638; Marston v. Gould, 69 N. Y. 220; Annand v. Tupper, 21 Nova Scotia 11, 16 Can. Sup. Ct. 718; 15 R. C. L. 506, § 9. Stating the effect of a number of leading cases, the text last above quoted from (33 C. J. 854) further says:

"After the agreement has been partially executed by the member's payment of a part of the capital or the performance of services, his associates cannot forfeit his interest in the enterprise and exclude him from further participation therein merely because of his failure to pay the

full amount promised by him, especially when no demand has been made upon him for contribution and he has not refused to pay his share.''

It has been held that where parties who have contracted to share in the expense of prospecting for mines for an interest in the result, fail to contribute toward the expense of acquiring claims conflicting with those located by their representative, this will not bar their right to relief, if the necessary funds were secured by a sale of a portion of the claim to others and they were not notified of the necessity of contribution. Lind v. Webber, 36 Nev. 623, 134 Pac. 461, 135 Pac. 139, 141 Pac. 458, 50 L. R. A. (N. S.) 1046, Ann. Cas. 1916 A, 1202. And this 15 R. C. L. 505, § 8, states to be the law. In Senneff, et al. v. Healy, 155 Iowa 82, 135 N. W. 27, 39 L. R. A. (N. S.) 219, it was held that where attorneys, not associated in the same firm, agreed jointly to prosecute an action on a contingent fee to be divided equally between them, and one of the attorneys died after a favorable judgment had been recovered in the trial court, the other doing the necessary work thereafter to secure an affirmance of this judgment on appeal, there was a joint adventure which required an equal division of the fee with the deceased attorney's executrix and sole beneficiary under his will, without a special allowance to the surviving attorney in connection with the appeal.

The original agreement of the parties concerning the enterprise here involved, did not include any provision for the forfeiture of the interest of any one therein, in the event of his failure to perform his obligations thereunder. If such provision had existed and such a failure had occurred, then a different question would now be presented. 33 C. J. 854. But the evidence does not show a failure on the part of anyone connected with the joint adventure to perform the obligations resting upon him by reason of it or even that any attempt was made to forfeit anyone's interest therein. The mere ultimate refusal of defendants to recognize plaintiff's rights, after the operating contract had

been obtained, cannot be regarded as accomplishing such a forfeiture, nor is any such claim made. When the time came for paying the rental in 1924, if defendants had demanded of plaintiff or its trustees that its share of the rental be forthcoming, and the demand had not been met, whereupon defendants had made the arrangement with Sarah I. Hogg, there is authority for saying that plaintiff should be held excluded from further participation in the adventure.

Under the circumstances shown, however, and the authorities hereinabove cited, we conclude that the dissolution of the plaintiff was not intended to repudiate, and did not terminate, the contract of joint adventure existing between the parties.

It is contended that neither the plaintiff nor its surviving trustees could acquire any interest in future leases, because no legal right of renewal existed as to any of them. But this argument lays out of view both the underlying agreement of joint adventure proven, whereby the parties were to share proportionately in profits resulting from their procurement of new leases on the state land involved over a period of years, and the legal duty resting on co-adventurers of preserving the utmost good faith in their dealings with each other. That duty has been very clearly and forcefully defined by Chief Judge Cardozo of the New York Court of Appeals in Meinhard v. Salmon, 249 N. Y. 458, 164 N. E. 545, 546, 62 A. L. R. 1, where he said:

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt

v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.''

See also Fried et ux. v. Guiberson, supra. These matters of fact and law may not be here disregarded.

The leases taken each year were identical in form with the exception of the necessary change in date. While no absolute legal right of renewal was held by Weston, in whose name the leases were taken, yet through the efforts and payments of himself and his co-adventurers in performing their obligations under the various leases, he was enabled, for successive years, to invoke the administrative practice of the Board of Land Commissioners of this state as embodied in its Rule 69, providing:

''Renewals of prospector's leases may be granted by the Boards. No statutory right of renewal of a prospector's lease exists, but it is the policy of the Boards to give great consideration to the improvements, expenditures and equity rights of former lessees in granting prospector's leases.''

It is equitable that all whose capital and services were thus contributing factors in obtaining the lease should share proportionately, as agreed.

In Meinhard v. Salmon, supra, plaintiff and defendant, as co-adventurers, had a lease of hotel property which was taken in defendant's name, and remodeled for use as shops and offices. Plaintiff paid half of the amuont of money needed to reconstruct, alter, manage and operate the property. Defendant was sole manager of the enterprise. It was agreed that each should share proportionately in the profits of the venture, which ultimately proved extremely lucrative. Shortly before this lease expired, the defendant, unknown to the plaintiff, obtained from the lessor a new lease in the name of a corporation he controlled, covering other lots owned by the lessor and also the hotel property, both properties being consolidated for the purposes of a new lease.

The term of this new instrument did not begin until the expiration of the hotel property lease. It contemplated the erection of a new building on the enlarged site and involved the investment of three millions of dollars. The rental, under the original lease, was only $55,000 yearly; the rental for the combined property was to be from $350,000 to $475,000. Although the new lease was not strictly a renewal of the original lease, nevertheless the Court of Appeals determined that the defendant held it as an asset of the adventure, upon plaintiff assuming his share of the obligations, which the latter, as in the case at bar, at the trial offered to do.

So in Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252, where one or two partners, during the existence of the partnership and without the knowledge of the other, procured a renewal lease in his own name of the premises occupied by the firm, the term of which lease did not begin until the expiration of the partnership, it was held that the new lease was taken in trust for the firm.

Again, in Holmes v. Darling, 213 Mass. 303, 100 N. E. 611, 612, the partnership had a contract as the exclusive agent of the sale of lithia water. This contract was to continue for a term of ten years and the partnership for a like period. Eight years prior to the expiration of these agreements, one partner, without the knowledge of the other, obtained for himself a renewal of the contract of agency to commence after the expiration of the one already held. It was decided that the new contract belonged to the partnership, and in so holding the court said:

"Partnership is a relation of trust and confidence, and the law imposes upon each partner the duty of exercising toward his co-partner the utmost integrity and good faith in all partnership affairs. In transactions concerning the interests of the firm he must consider their mutual welfare rather than his own private benefit. If the principal defendant was unwilling to continue in business with the plaintiff after the expiration of their copartnership agreement, he should at least have notified him of that fact, and

have given him an equal opportunity to obtain an agency agreement at the expiration of the existing one. The value of the new agreement would depend largely upon the efforts of the partnership during the unexpired eight years of the old one; and during that period the principal defendant could not secretly secure for himself any private advantage such as obtaining a new lease of the premises in which the partnership business was transacted, or a new contract of agency which was the very basis and chief asset of their mutual enterprise. Any such advantage he holds in trust for the firm and he must account to his associate for the benefit received therefrom. Leach v. Leach, 18 Pick. (Mass.) 68; Mitchell v. Read, 84 N. Y. 556. We find no error in the action of the trial judge in finding and ruling that the plaintiff is entitled to an accounting upon the new contract of agency.''

See also Pomeroy's Equity Jurisprudence (4th Ed.) § 1050; Ongley v. Marcin, 180 App. Div. 685, 168 N. Y. Sup. 30; Crawford v. Forrester, 108 Kan. 222, 194 Pac. 635; Dexter & Carpenter, Inc. v. Houston, 20 Fed. (2nd) (C. C. A.) 647.

Finally, it is insisted that plaintiff was guilty of laches in the assertion of its claim. This court has, however, said in Harney, Admr. v. Montgomery, supra, that:

''Laches cannot be imputed to a party justifiably ignorant of the facts creating his cause of action. (1 C. J. 244.) And when a suit is brought within the time fixed by the analagous statute of limitations, the burden is on the defendants to show that extraordinary circumstances exist which require the application of the doctrine of laches in order to secure a just result. * * * And included in such proof, obviously, must be the fact that the plaintiff has such knowledge requisite under general principles of equity so as to hold him estopped.''

As we have seen, plaintiff was not in default in performing the obligations resting upon it arising out of the joint adventure. Neither it nor its trustees knew, until September 12, 1927, that defendants claimed that it had no interest in the profits resulting from the operating agreement

made with the Continental Oil Company. This suit was begun April 17, 1928. We are unable to see that plaintiff should be denied relief because of any claim by laches.

There is evidence in the case which tends to show that Sarah I. Hogg, in consideration of her payments of the rentals on the several leases taken during the years 1924 to 1927 inclusive, was given by defendants a one-fifth or nine/forty-fifths interest in the profits to be obtained from the adventure. Plaintiff, too, recognizes and ratifies that transfer in its amended petition. In this court we understood her interest to that extent was conceded by counsel for both parties without question. Her interest is not protected by the decree under review. We think it should be, and that sufficient has been presented to this court by the record and the statements of counsel to justify us in properly modifying the decree. Plaintiff in its amended petition asks for only a twenty/forty-fifths interest in the profits accruing from the enterprise. Nevertheless, the decree awards it twenty-five/forty-fifths. This should be corrected. The decree will, accordingly, be modified by directing that of the moneys found by the court, as above recited, as received and to be received by the defendants under the operating agreement aforesaid, Sarah I. Hogg is entitled to have paid to her nine/forty-fifths, and the plaintiff to have paid to it twenty/forty-fifths thereof, and as so modified the decree of the District Court is affirmed.

*Affirmed, with modifications.*

KIMBALL, C. J., and BLUME, J., concur.